BURRELL GARDNER, trustee, *et al.*, plaintiffs in error, *vs.* E. C. GRANNISS, administrator, defendant in error.

(JACKSON, Judge, having been of counsel, did not preside in this case.)

| 57 | 539 |
| 96 | 16 |
| 57 | 539 |
| 107 | 793 |
| 57 | 539 |
| a111 | 294 |
| 57 | 539 |
| 128 | 314 |

1. After service, appearance, and pleading to the merits, with no other plea, it is too late, at the trial, for the defendant to make objection to the manner in which he has been brought into court, or to the jurisdiction of the court over his person.

2. After the sole defendant in an action of ejectment has died, and another defendant has been brought in, and has pleaded to the merits, the action may proceed as to the latter, without making the representatives of the former a party.

3. When one of the parties to a special or collateral issue, tried during the pendency of the main case, is now dead, and his representatives are not before the court, the supreme court will not, on a writ of error brought by a person who was not then a party to the case, examine the proceedings had upon the trial of that issue.

4. The verdict on an issue of forgery, made up and tried under the Code, section 2712, is no evidence against a defendant subsequently made a party to the ejectment at the instance of the plantiff; more especially, if

the plaintiff proceeds against the new defendant for *mesne* profits, as well as for the premises in dispute.

5. An affidavit which was used in the cause, in connection with the issue of forgery, by the original defendant, cannot, solely because it was so used, be read to the jury to affect a defendant who was not then a party, and who did not become a party voluntarily.

6. A witness who read an original record before it was destroyed, may testify that a defective probate (such as now appears on the deed itself) was upon the record; notwithstanding an official copy, made from the record before destruction, sets forth the deed as recorded without any probate annexed.

7. Where both parties claim to have derived title from the same person, the plaintiff through a deed from him, and the defendant through a deed from his administrator, and where the defendant attacks the plaintiff's deed as a forgery, the last will of such person, duly probated, which disposes of other lands but makes no disposition or mention of the land now in question, is admissible in evidence for the plaintiff, as tending to show non-claim by the testator; the will bearing date later than the deed in controversy. That the will does not expressly declare the intention of the testator to dispose of all of his estate, weakens its force as evidence, but does not render it wholly inadmissible.

8. A deed more than thirty years old at the time of trial, is an ancient document, though it was under thirty when the suit was commenced. Such a deed, fair on its face, coming from the proper custody, with a defective probate by one of the subscribing witnesses, whose handwriting, in his attesting signature to the deed itself, is proved to be genuine, and with an entry of recording on the deed (also proved to be genuine) made by the clerk who was in office at the time the entry bears date, which date is more than thirty years anterior to the trial, is admissible in evidence, though the other attesting witness is still alive and accessible, and is not examined by the party offering the deed, and though no actual possession of the land under the deed was ever held, the land having been vacant when the deed purports to have been executed, and having remained vacant for nineteen years thereafter.

9. If a deed essential to the plaintiff's title is a forgery, the verdict should be for the defendant.

10. Any circumstance which would place a man of ordinary prudence fully upon his guard, and induce serious inquiry, is sufficient to constitute notice of a prior unrecorded deed. And a younger deed, taken with such notice, acquires no preference by being recorded in due time.

11. Where a person claiming to be the owner is brought in as defendant to an action of ejectment which was instituted originally against his overseer or tenant then in actual possession, prescription, as a defense to that action, is measured by the length of possession prior to the suit, without adding the time that elapsed from then till the landlord was made a party.

12. A defendant in ejectment is not liable for *mesne* profits taken, prior to his own entry, by those under whom he claims; but if, in accounting for the

profits chargeable to himself, he claims credit for improvements made by his predecessors, such improvements must first answer for the profits taken by those who erected them.

13. Where the statute of limitations as to *mesne* profits (Code, section 3058; *46 Georgia Reports*; *120*,) is not pleaded, the account may be taken for the whole period during which the defendant has been in perception of the profits as against the plaintiff's title.

14. *Mesne* profits will not be denied the plaintiff solely because the defendant, by clearing and improving the premises, has made the premises more valuable than they were when he entered.

15. Unless a request to charge is all legal and pertinent, the court is not bound to give any part of it.

Ejectment. Practice in the Superior Court. Pleadings. Waiver. Parties. Practice in the Supreme Court. Evidence. Will. Ancient documents. Deeds. Registry. Notice. Prescription. *Mesne* profits. Statute of limitations. Charge of Court. Before Judge CLARK. Lee Superior Court. March Term, 1876.

In February, 1858, Granniss, as the administrator of Kennedy, brought ejectment against John Herron for lot of land one hundred and forty-four, in the thirteenth district of Lee county, and for *mesne* profits. Herron died in 1870. At the March term, 1871, of Lee superior court, an order was passed reciting his death; that James Gardner, of Richmond county, was the real defendant and directing that he be served with a copy of the declaration and process twenty days before the next term of the court. Service was accordingly perfected on September 1st, 1871. In October, 1872, service was again perfected on Gardner and on his wife. They appeared and pleaded the general issue and title by prescription.

The plaintiff showed a regular chain of title from the state to himself. One link consisted of a deed from Theodocius Cook, the original grantee, to John Fergerson, executed in presence of Sarah Cook and Smith Cook, dated April 19th, 1834, and recorded November 29th, 1837, upon the following probate:

" GEORGIA—MONROE COUNTY :

"Personally came before me, Smith Cook, who being duly sworn, says that he saw Theodocius Cook sign the within deed for the purpose therein mentioned, and that Sarah Cook, by making her mark, subscribed as a witness to said deed, and that the said Smith Cook did also sign his name as a witness to the same.    (Signed)    SMITH COOK.
" Sworn to and subscribed before me,
        this 19th April, 1834.
            " J. FERGERSON, *J. P.*"

The plaintiff also proved by two witnesses, the following facts : The land in controversy was a forest lot and vacant until purchased by Bartlett in 1853.   He sold to Jordan in 1853 or 1854.   The latter cleared from sixty to ninety acres and cultivated it until his death.   After his decease Gardner went into possession, as his son-in-law, and has so remained until the present time.   Herron was his overseer in 1858, and at the time this suit was brought.   He died in 1870.   Worth from $1 00 to $2 00 per acre per annum as rent.   In 1866 and 1867 was worth about $4 00 per acre rent.   There are now about one hundred and twelve acres cleared.   Worth $5 00 per acre to clear it.   Improvements are worth about $300 00.

The defendants showed a regular chain of title from Joab Cook, as administrator of Theodocius Cook, to themselves. The deed from the administrator was executed on July 6th, 1852, and recorded on the next day.

They also showed by Sarah Wilder, formerly Cook, that she never witnessed the deed from Theodocius Cook to Fergerson.

Plaintiff introduced the petition of defendant Herron, made at the April term, 1858, in which he stated that he expected to show that the deed from Theodocius Cook to John Fergerson was a forgery ; that he would show by Sarah Cook, who purports to be one of the attesting witnesses, that she never signed the same.   Therefore he prayed that plaintiff

be required to file said original deed in the clerk's office for the use of defendant, to be attached to interrogatories to be submitted to witnesses for the purposes aforesaid.

Also, the affidavit of Sarah Wilder, formerly Sarah Cook, made in support of such petition, to the effect that in the spring of the year 1834, Fergerson purchased of Theodocius Cook a lot of land in the tenth district of Early county, number three hundred and forty-four, and that she witnessed the deed to that lot; that Cook refused to sell the lot in controversy; that she never witnessed a deed to that lot, and that if any such instrument be produced, with her name thereon as a witness, it is a forgery.

Also, the depositions of Theodocius Cook, grand-son of the maker of the deed, proving the signature of Smith Cook, and that he died in Henry county in 1838 or 1839.

Also, an affidavit made by the defendant Herron, attacking the aforesaid deed as a forgery, and the proceedings had thereon, at the September term, 1869, resulting in a verdict sustaining the genuineness of the deed.

In order to lay the necessary foundation for the introduction of such deed as an ancient document, plaintiff introduced Mr. Sneed, an attorney at law, who testified that a short time before the institution of this suit, Kennedy, then in life, and his client, gave him the Fergerson deed, and the others read in evidence, as constituting the chain of title under which he claimed the lot in controversy; that these deeds have been in his possession and in that of his associate counsel, from then until now; that soon after the commencement of this suit the Fergerson deed was submitted to the court for inspection; that a short time after the deposition of Mrs. Wilder was returned, the first trial was had, and her evidence used thereon by the defendant.

William C. Gill testified, in substance, as follows: On the day Bartlett obtained title to this lot from Williams, he asked witness to go and attest the deed as a justice of the peace; witness then told Bartlett that there was another deed from the drawer for the lot, and he replied that he knew all about

it; he was safe, as he got a warranty from Williams, who was a wealthy man ; saw the Fergerson deed on record in 1851, and feels sure that the probate, as now on the deed, was recorded there, for it was something strange to him ; saw Williams in Griffin in 1853. He complained of Bartlett's not paying him for the land. He stated that the Fergerson deed was a forgery, and that he had told Bartlett all about it.

David A. Vason and W. A. Hawkins testified, in substance, as follows : Bartlett, before purchasing, employed them to investigate the title to the lot in controversy. They found the record of the Fergerson deed. There was no probate of record. If it was there, it did not follow the deed as a part thereof. They had a certified copy made by the clerk, which they now have in court. They advised Bartlett that this was an irregular registry, was not legal notice to any one, and that he could safely purchase. He bought, and afterwards sold to Jordan. Witness, Vason, was called on by Bartlett to see Jordan in reference to the sale. Jordan stated that he had heard that there was another deed of record, and he did not wish to pay for this lot unless the title was good. Witness explained to him the facts, and stated that he and Hawkins both agreed that the defective record did not affect his title. He replied that he was satisfied there was no danger, but he did not wish to have a law-suit, but that if Bartlett would secure him from trouble and danger he would pay for the lot. This was done and the trade consummated. Neither of witnesses represented the present defendants until they were served in October, 1872. The entry of record on the Fergerson deed was in the handwriting of the then clerk of the superior court. Gardner was notified of the suit against Herron, but neither appeared nor employed counsel. Neither he nor his wife ever resided in Lee county.

The plaintiff also introduced the will of Theodocius Cook, executed on August 26th, 1834, and admitted to probate on the 17th of the following September. It consisted of three items; the first asserted that he owed no debts; the second disposed of lot number one hundred and forty-three, in the

third district of Henry county; the third disposed of certain rents and debts due to him.

The remaining facts, so far as material, will be found in the opinion.

The jury found for the plaintiff the premises in dispute, $2,178 00, *mesne* profits, and costs of suit.

Defendants moved for a new trial on the following grounds:

1st. Because the court erred in allowing plaintiff to discontinue said case as to Herron, and to make Gardner and his wife sole defendants therein, it appearing that Herron died in 1870; that they were not served with a copy of the declaration until October, 1872, and that they then resided, and still reside, in Richmond county, Georgia; also in holding that this court had jurisdiction over them, that service as to them was regular, and in allowing plaintiff's case thus to proceed.

2d. Because the court erred in allowing the affidavit of Mrs. Sarah Cook to be read in evidence by plaintiff, without any proof of its execution or having laid the foundation for it, and in holding that, as it had been used by defendant, Herron, to sustain an application to require plaintiff to file his deed in office, it could now be used by plaintiff as evidence.

3d. Because the court erred in allowing Gill to testify that the probate to the Fergerson deed was upon the record, as a part of said deed, when he inspected it in 1851, although it was not contained in the certified copy of the record made by the keeper thereof in 1853, before the records were destroyed by fire.

4th. Because the court erred in allowing said deed to go to the jury as an ancient document upon the evidence of Sneed and Gill—Sneed stating that the deed, with others, was placed in his hands, as an attorney, by Kennedy as one of the deeds under which the latter claimed the land, it not being thirty years old at the time of the suit in 1858, and there being no evidence of possession of the land thereunder.

5th. Because the court erred in allowing said deed to be

placed in evidence upon the defective probate, and without proof of its execution.

6th. Because the court erred in admitting evidence to prove the death and hand-writing of Cook, one of the subscribing witnesses to the Fergerson deed, the evidence of Sarah Cook, the other subscribing witness, being in court denying that she ever witnessed the execution of the same, and in allowing the deed to go to the jury upon such proof.

7th. Because the court erred in allowing the verdict and judgment upon the issue of forgery made on the Fergerson deed, to be introduced in evidence, it appearing that these defendants were not made parties until long after the trial of that issue.

8th. Because the court erred in refusing to charge the following requests:

"(1.) If you believe, from the evidence, that the deed from Cook to Fergerson, dated 19th of April, 1834, is a forgery, then you will find for the defendants, the rule of law being that the plaintiff must recover on the strength of his own title, and not upon the weakness of the defendants' title.

"(2.) In determining whether the deed is a forgery or not, you will look to the evidence on that issue. The witnesses to a deed must, in all cases, be produced when it is in the power of the party to produce them. If the witnesses cannot be produced, then it may be proved by their hand-writing, but to show a perfect execution of a deed, signing, sealing and delivery are all essential. The hand-writing of the witnesses and maker being the next grade of evidence after attesting witnesses, if they have failed to prove the signatures of all the witnesses and the maker, the mere opinion of other persons that the hand-writing is that of one of the witnesses is secondary, and can only prevail in the absence of stronger and better evidence. The fact that the deed is an ancient document does not relieve it from being attacked as a forgery.

"(3.) If you believe that Theodocius Cook died in 1834, and that Joab Cook took out letters of administration, ob-

tained an order to sell the land and did so, that it was bought at such sale by Bartlett, sold to Jordan, and the deeds recorded within twelve months after their execution, then unless Jordan had notice of the outstanding title in Fergerson, then the second deed will take the title; and the fact that he read the original record of this deed, or was informed that such was on the record, would not be such notice as the law requires, or such as would affect his title.

"(4.) The issue made by Herron, the sole defendant, on the fact of the deed of Theodocius Cook being genuine, and the verdict thereon, does not bind any but parties and privies in estate and law; and if Gardner was not a party at the time, and did not know of or participate in said trial, then he can submit evidence before you as to its being a forgery; and if you believe, notwithstanding said verdict, that the deed is a forgery, you ought to find for the defendants.

"(5.) The plaintiff in this case can only recover upon the demise of Kennedy, and if you believe that Gardner and the children were not made parties until 1872, (at that time Herron being dead and his administrator not being a party) then the statute of limitations continued to run as to Gardner and the children; and if more than seven years elapsed, then the plaintiff cannot recover.

"(6.) If you believe, from the evidence, that Jordan went into possession of the lot of land under a deed from Bartlett, continued to occupy and clear for more than seven years, that Gardner and the children went into possession under Jordan, and the time is more than seven years from Jordan's entry until the suit was commenced against the Gardners, then you ought to find for the defendants."

9th. Because the court erred in refusing to charge the following request of defendants' counsel: "If you are satisfied, from the evidence, that the lot of land is, by reason of the improvements placed upon it by defendant, more valuable than it would be in the forest, then the plaintiff is not entitled to recover any *mesne* profits."

10th. Because the verdict was contrary to law, contrary to

the evidence, and without evidence to support it, and decidedly against the weight of the evidence.

11th. Because the verdict for *mesne* profits is excessive, without evidence to support it, and against the law and the charge of the court.

12th. Because the court erred in allowing plaintiff to prove the claim for *mesne* rents from 1853, against these defendants, they having had no connection with the case until they were served with a copy of the declaration in October, 1872. [Defendants' counsel insisted that if the court had jurisdiction of them upon the question of title to the land, it had not upon the suit for rent or damages, they residing in Richmond county.]

13th. Because the court erred in admitting in evidence a certified copy of the will of Theodocius Cook, it not appearing from the will that the testator intended to dispose of all his estate.

14th.        *        *        *        *        *
15th.        *        *        *        *        *
16th.        *        *        *        *        *

17th. Because the court erred on the trial of the collateral issue as to the Fergerson deed being a forgery, at a previous term, on the various grounds set forth in the bill of exceptions filed, *pendente lite*, which is made a part hereof. (These exceptions came up as a part of the record.)

18th. Because the verdict was contrary to law and the evidence, and against the weight of the evidence.

19th. Because the court erred in charging as follows: "If you are satisfied, from the evidence, that Herron, at the time he was served, was overseer for Gardner, and that he defended the suit in his own name, or permitted others to use his name by way of defense, and that Gardner knew of these facts, then the question of whether the deed from Cook to Fergerson was a forgery or not, was not an open question; such notice affected Gardner and he was bound by the verdict rendered by the jury on the issue of forgery; but if Herron was not the overseer, or if he did not defend nor permit others to

defend in his name, or Gardner did not know of these facts, if they existed, then it is for the jury to say whether or not the deed was a forgery.

"If you believe that Herron was Gardner's overseer at the time he was served, in 1858, that he made defense or allowed others to do so in his name, and Gardner had notice of these facts, the statute of limitations set up by defendants ceased to run from the date of the filing of the suit, and Gardner must show seven years adverse possession prior to such filing; but if Herron was not overseer, or did not defend or allow his name to be used for defense, or if these facts existed and Gardner did not know of them, then the statute of limitations did run in favor of Gardner, from the time his adverse possession commenced, until the service on him in 1872.

"The deed from Cook to Ferguson is illegally recorded, and for all purposes may be considered as not recorded at all. It is no notice to a *bona fide* purchaser who records his deed within twelve months; and if the purchaser, with no other notice than the illegally recorded deed, records his deed within twelve months, his deed takes priority over the deed illegally recorded. But if Williams, Bartlett and Jordan, had actual notice of the Fergerson deed, or had such other notice as to put a reasonably cautious man on inquiry; if they saw the deed on record, or if they had such notice as to make them act with reference to it, that is, if they had such notice as to make them take unusual precaution, as, for instance, being unusually cautious as to the solvency of their warrantor, and relying more on this than on the strength of their title, or demanding security before consummating the trade for the land, then they are charged with notice of Fergerson's deed, and though it is illegally recorded, they gain nothing by recording their deed within twelve months. If plaintiff is entitled to recover, he is entitled to recover *mesne* profits from commencement of suit to date, after deducting the value of improvements and the increased value of the land over and above improvements, on account of them."

The motion was overruled, and defendants excepted.

VASON & DAVIS; W. A. HAWKINS, for plaintiffs in error.

R. F. LYON, for defendant.

BLECKLEY, Judge.

Cook acquired the land by grant from the state, and was the common source from which both parties claimed to have derived title. The plaintiff's chain commenced with a deed from Cook to Fergerson, dated in 1834, and recorded, on a defective probate, in 1837. The genuineness of this deed was in question. The defendants' chain commenced with a deed from Cook's administrator to Williams, dated and duly recorded in 1852. The action was commenced in 1858 against Herron, who died in 1870, and whose representatives have never been made parties. The Gardners were brought in as parties defendant, at the plaintiff's instance, in 1871.

1. The Gardners resided in Richmond county. In the first, and again in the twelfth ground of the motion for new trial, the point is presented, that such residence deprived the court in Lee of jurisdiction as to them. The first ground makes the further point, that the service upon them was not valid. But they had appeared and pleaded to the merits, without objecting either to the jurisdiction or the service. At the trial, they were too late with these objections. We do not intimate that urging them at the first opportunity, would have been attended with success. Ejectment has to be brought in the county where the land lies, and generally the recovery of *mesne* profits must be had, if had at all, in the same abtion : See Code, sections 3403, 5119, 3356, 3357; 22 *Georgia Reports*, 572, with which compare 19 *Ibid.*, page 30. The right to introduce new defendants, pending action, seems to be without restriction as to their residence : Code, section 3360.

2. The first ground of the motion for new trial complains, moreover, that the action was discontinued as to the original defendant, and in that state was tried as to the Gardners. But these latter were committed to the case, as a case against them-

selves, when they became parties and pleaded to the merits. Not until after that occurred, was the case " discontinued," as it is called in the record, with respect to the former defendant. When the Gardners were upon the record as parties and at issue wih the plaintiff on the merits, they were parties, to all intents and purposes ; and they did not cease to be so, though the action was allowed to drop as against the deceased and his estate. Ejectment can be tried as to defendants who are alive, without calling in the representatives of a deceased defendant : 13 *Georgia Reports,* 282 ; 44 *Ibid.,* 514 ; Code, sections 3441, 3444. If it should be thought that the general rule stated in the latter of these two sections of the Code, does not apply to ejectment, because this class of actions is specially provided for in the former section, the criticism may be accepted with little or no detriment to our present ruling, which is based chiefly on the fact, that, though the original defendant was already dead when the Gardners were brought in, they suffered themselves to become parties without objection, and made up for trial issues between themselves and the plantiff which could be fully and correctly tried without other parties, especially without the representatives of their own own overseer.

3. The seventeenth ground of the motion for new trial, relates to alleged errors embraced in a bill of exceptions filed and entered *pendente lite.* These matters grew out of the special issue of forgery, raised and tried whilst the deceased defendant was living, and before the Gardners were brought into the case. For the trial of that special issue to be reviewed, it is essential that the parties to it should be here, by themselves or their legal representatives. Death has removed one of them, and his place cannot be filled, except by his executor or administrator.

4. The special issue of forgery involved the deed from Cook to Fergerson, one of the deeds essential to the plaintiff's ultimate recovery. The issue was found in favor of the deed. The admissibility and effect of that finding, in the subsequent trial of the main case, are points presented in the seventh

ground of the motion for new trial, and in the fourth request to charge, set out in the eighth ground, and in the charge as given, set out in the nineteenth ground of the motion. The Gardners, it will be remembered, were not parties to the suit, or to the special issue, when the latter was tried, and there is no evidence that they had concerned themselves with the litigation or taken any part in its management. The same reason which prevents them from having this writ of error applied to the proceedings that took place on the issue of forgery, prevents them from being affected by those proceedings, or by the verdict rendered in the same. Not being entitled to purge the result of error, supposing it to contain any, they are not bound to abide it. If they had voluntarily become parties, they might be held to have adopted the case as they found it; but they were brought in by the plaintiff, who seeks, not only to recover of them the land, but to make them liable for *mesne* profits. Though a recovery of the land from the original defendant might have been a recovery thereof as to them also, (see 47 *Georgia Reports*, 540 ; 53 *Ibid.*, 94,) the like rule would not hold as to *mesne* profits. A judgment for these against their overseer could not have been collected out of them or their property. The truth is, that when a plaintiff in ejectment discovers that his suit is against a mere tenant, overseer, or agent, he has the option to bring in the defendant's principal or landlord, or not, as he may elect. And if he desires to bind the latter, conclusively, even by the final judgment as to the possession or the title, it would be far better to bring him in, when practicable, before that judgment is rendered. If, moreover, he seeks to bind or affect him by an interlocutory verdict, order or judgment, he should summon him early enough to let him be heard in resistance to the making of it. We think the finding of the jury on the issue of forgery, was not even admissible evidence against the Gardners after the main case had been discontinued as to the overseer. The plaintiff should not be permitted to take the full fruits of a full trial, and yet try only in part. Nor should he try some of his case with one defendant, and the balance

with others, without the presence of the first or of his legal representatives.

5. The second ground of the motion for new trial relates to the affidavit of Sarah Cook. Her evidence was introduced by the Gardners to prove the deed a forgery. The plaintiff, to contradict her or affect her credit, read in evidence an affidavit made by her, and which had been used in this litigation by the deceased defendant to sustain his application to require the deed to be filed in the clerk's office. It was admitted (probably because it had been so used) by the court, though proof of its execution was not made, and though no foundation for it as impeaching evidence was laid; that is, as we infer, it was not exhibited or read to her, nor was her attention called to its contents. As the affidavit purported to have been made in this state, it needed no proof of execution other than that afforded by the official attestation of an officer authorized to administer oaths. But unless the statements in i were "*made* under oath in connection with some judicial proceeding," the foundation should have been laid : Code, section 3872. That *making* the affidavit was connected with a judicial proceeding, would not be inferable from the use of it ; unless the use had been by the person or persons now to be affected by the inference. Such an affidavit is not like answers to interrogatories, which latter, being necessarily *made* in connection with some judicial proceeding, would fall within the terms of the Code, whether ever used in the proceeding or not. The affidavit now under consideration, may have been made with no reference to this or any other case, but being in existence and adapted to the purpose, may have become connected, for the first time, with the proceeding, when it was used or filed.

6. The third ground of the motion for new trial makes the point, that, when there is in evidence a certified copy of a deed, taken in 1853, from the record since destroyed, parol evidence is not admissible to show, that, in 1851, a defective probate, such as now appears on the original deed itself, was upon the record ; that both the deed and the probate were recorded

together. The officially certified copy, made in 1853, gave no probate, and was silent as to any. The witness who read the record in 1851, read the probate as well as the deed. We do not see that there is here any inconsistency or contradiction. But suppose there was, is the record of a deed without probate, or even with a defective probate, an official record at all? And if not, can the contents of the record be proved, before or after destruction of the book, by a certified copy? Can the clerk authenticate the copy of a record which the law did not authorize him or his predecessor in office to make? Instead of the copy now said to be superior to the parol evidence being the exclusive evidence of what appeared in the book, a grave question might be raised whether its rank is not lower, instead of higher, than that of the parol evidence: 11 *Georgia Reports,* 636.

7. The thirteenth ground of the motion for new trial complains of the reception in evidence of Cook's will, executed later than the date of the deed to Fergerson—the deed said to be a forgery. The will disposes of other land but is silent as to this. The reason of the silence might be, that he had conveyed the land by the deed in question. True, it might be something very different; as, that he forgot some of his property, or desired to die testate as to some but not as to all. Though the will may be slight evidence, we think it was relevant, and therefore admissible: 44 *Georgia,* 515, (2.)

8. The fourth, fifth and sixth grounds of the motion for new trial, make the question whether there was evidence enough, and of the right kind, to admit the disputed deed in evidence as an ancient document. The deed, if genuine, was less than thirty years old when the action was brought, but was past that age at the time of trial. The competency of evidence depends, as a general rule, on the state of things at the time it is offered and received. A court does not usually say, this was not evidence heretofore and therefore cannot come in now, or, this was admissible once and therefore is admissible still. A witness once incompetent may become competent; a document not well authenticated may be better

authenticated; a particular fact, in one state of circumstances, may be no evidence, and in another and later state, the best of evidence. At the time of trial, the deed was old enough to testify for itself, and not until then did it come forward to make its testimony heard. Till fit to speak, it was silent. It came from the proper custody, and was fair on its face. The handwriting of one of the subscribing witnesses was proved; that is, his attesting signature was shown, presumptively, to be genuine. There was, on the deed itself, a defective probate by that witness, or purporting to be by him. On the deed, too, was an entry of recording, dated more than thirty years before the trial, and both written and signed by the clerk who was in office at the time the entry bore date. True, the other subscribing witness was alive and accessible; in fact, was examined by the adverse party in opposition to the deed. But was it necessary to call her to prove the deed, in addition to, or in place of, the corroborated evidence adduced? Because one of the subscribing witnesses to an ancient deed can be produced, or is present, must he be examined? Must he be examined, though the deed be ancient, and though it be known that his testimony will tend to overthrow, rather than to establish it? There seems to be some authority to the contrary: Code, section 3837; 3 Phil. Ev., Cowen & Hill, note 937, p. 1356; *Ibid.*, note 910, p. 1396. What a subscribing witness testifies may be contradicted: 18 *Georgia Reports*, 40, 350. The point was urged that actual possession of the land at some time under, or in pursuance of the deed, would be necessary to admit the writing as an ancient document. That might be so if the good appearance, the date, and the custody, of the paper were all. But in this case there was more; there was satisfactory evidence that the deed actually existed and had passed through the clerk's office more than thirty years before the trial, and there was some evidence, such as the handwriting of an attesting witness, tending to show actual execution. Besides, it appeared that there was no adverse possession at the date of the deed, nor for nineteen years thereafter. The following authorities may be

consulted on this question : 1 *Kelly*, 551 ; 8 *Georgia Reports,* 201 (3); 12 *Ibid.,* 267 ; 13 *Ibid.,* 523; 23 *Ibid.,* 406 ; 29 *Ibid.,* 355 ; 31 *Ibid.,* 593; 33 *Ibid.,* 565; 43 *Ibid.,* 346 to 352; 49 *Ibid.,* 165; 3 Phil. Ev., Cowen & Hill's Notes, pp. 1310 to 1316, note 903. The admission of the deed in evidence, would not be decisive of its genuineness. The jury might still, viewing it in the light of all the facts, think it not genuine, and find accordingly.

9. The first request to charge, and the equivalent thereof at the close of the fourth request, both stated in the eighth ground of the motion for new trial, should have been recognized as sound law. If the deed was a forgery, the plaintiff's line was broken, and defeat was inevitable.

10. In the eighth ground of the motion for new trial, the third request to charge relates to the effect of recording a younger deed in due time, where there is an elder not duly recorded. It concedes that notice of the elder would prevent the younger from taking so as to be a source, or vehicle of title to another purchaser, if he, also, had notice. The real point the request makes is, as to what constitutes or is evidence of notice. It denies that reading, or hearing of, a record of the elder deed will suffice, if the recording took place upon an insufficient probate, such recording being extralegal, or unauthorized, and the same as none. The subject comes up again in the court's charge set out in the nineteenth ground of the motion for new trial. We think the court was substantially correct; and that whatsoever would place a man of ordinary prudence fully upon his guard and induce serious inquiry, would amount to notice, or be evidence from which the jury might infer it: 25 *Georgia Reports,* 277 ; 55 *Ibid.,* 438; Code, section 2790. Perhaps the court should have left the sufficiency of the facts more distinctly to the jury, instead of declaring, as a matter of law, that such or such would be sufficient. Of course, the record upon defective probate, unless actually seen or heard of, would count for nothing. The mere existence of such a record, would not put any person on inquiry who was not informed of its existence: 7 *Georgia*

*Reports*, 432; 11 *Ibid.*, 636; 13 *Ibid.*, 443, (5.) The difference is, that when a deed is well recorded, everybody must be presumed to know of the record, for certain purposes; but when not well recorded, the presumption of ignorance holds, until actual knowledge or information of the record is clearly proved.

11. Prescription, or the statute of limitations, is dealt with in the eighth ground of the motion for new trial, (fifth and sixth request to charge) and in the nineteenth ground of the motion, which sets out the charge on that subject, as the court gave it. We shall speak of the sixth request under another head. The fifth was correctly refused; and the charge given was not less favorable to the defendants than it should have been. Perhaps, in some minor particulars, it was more so. If the action was originally against the overseer or the tenant of the Gardners, the possession against which it was aimed could not, while the action was proceeding for the express purpose of putting an end to that possession, count in their favor as part of the means of defeating the action. The possession was, so to speak, *sued;* and if it was their possession, whoever held it for or under them, was a proper person to name as a defendant, whether they, also, were named with him or not. If the suit was an attack upon their possession, they having no possession except that in which they were represented by the overseer or tenant when sued, it would never, so far as prescription or limitation is concerned, be too late to make them parties, so long as that suit was pending. However late they might come or be brought in, it would still be a suit applying to the same possession which existed at the time it was originally commenced; that is, *their* possession, then held by their tenant or overseer, though now held, it may be, directly by themselves in person: See 47 *Georgia Reports*, 540.

12. How far back the reach after *mesne* profits might extend, is one of the questions raised in the twelfth ground of the motion for a new trial, and further dealt with at the close of the court's charge in the nineteenth ground. Evidence, it

seems, was admitted covering a considerable period of time anterior to any connection by the Gardners with the premises, or with the title under which they claim. The court's charge, however, seems to contemplate that profits as far back as to the commencement of this suit, and no farther, were to be considered. The rule is stated in 47 *Georgia Reports,* 540, touching profits and improvements ante-dating the claim of title by a defendant. Of course, a defendant who takes no credit for improvements made prior to his own time, is not chargeable with profits enjoyed by his predecessors. It is equally clear that if he does take credit for their improvements, all profits chargeable to them, or to those of them who erected the improvements, should first be deducted.

13. In the state of the pleadings, the court was certainly correct in permitting profits to be computed from the commencement of the action; that is, if the plaintiff was entitled to recover at all, and if the original defendant, as seems to be well established, was in as overseer of the Gardners, and held alone for them when the action was brought. To protect themselves from accounting for all the profits, whether accruing before or after the commencement of the action, which they had taken, directly by themselves, or indirectly through another in their employment, on the ground that, by reason of delay to make them parties, a portion of the profits had, as to them, become barred by the statute of limitations, the statute, as applicable to *mesne* profits, should have been pleaded : Code, section 3058 ; 46 *Georgia Reports,* 120. How far, under the circumstances, such a plea would have been available, we do not decide. It is enough to say, that, in the absence of the plea, the charge was not error.

14. We fail to perceive any merit in the ninth ground of the motion for new trial, which suggests that the question of *mesne* profits is entirely out of the case if, by reason of improvements erected by the defendants, the land is more valuable now than it would have been if it had been let alone. This would, indeed, be a novel principle to establish between parties in ejectment. With improvements adding perma-

nently $1 00 to the value of the premises, and no deterioration of the original estate, in the meantime, a false claimant might enjoy a plantation, or, it may be, a whole county, for years, free of rent. There must be some mistake of law where such a proposition is accepted, or deemed acceptable: Code, sections 2906, 3468; 39 *Georgia Reports*, 328.

15. The requests to charge are all in the eighth ground of the motion for new trial. Most of them have been sufficiently disposed of in the preceding paragraphs of this opinion. They may now be passed over rapidly. The first request is good law; the second is sound in part, but for the most part, unsound or inapplicable. The third closes wrong whether it opens correctly or not. The fourth is substantially sound, but why instruct the jury that a party could submit evidence? The fifth begins well, but ends ill. The sixth does not accurately put a case of adverse possession, (Code, section 2679,) even if it were otherwise unobjectionable. Further elaboration, would be both tedious and unprofitable.

Judgment reversed.