ROWE *v.* HENDERSON NAVAL STORES COMPANY.

1. An administrator's deed properly executed upon a valuable consideration, and duly recorded, has priority over an older unrecorded deed made by the administrator's intestate, of which the grantee in the first-named deed had no notice at the time the deed to him was executed.
2. Where in such a case the vendee under the administrator's deed goes into immediate possession of the lands conveyed, as against one claiming by virtue of "a timber lease" under a successor in title to the administrator's intestate, without possession, the former will prevail.
(*a*) The fact that the lease was "duly executed and recorded," without evidence to show that the administrator's vendee had actual notice of the prior deed upon which the lease depended, is not sufficient to give priority to the lessee over the administrator's vendee.
3. The claims of title of the plaintiff and the defendant being antagonistic, and the latter having shown possession under a superior title, the court erred in granting an interlocutory injunction against the defendant, and in not granting an injunction against the plaintiff.

JANUARY 22, 1913.

Injunction.  Before Judge Thomas.  Berrien superior court. June 5, 1912.

The Henderson Naval Stores Company filed its petition against M. Rowe, alleging: that it was the owner and holder of the legal title to all the timber suitable for turpentine purposes upon lot of land number 508 in the 6th district of Berrien county, said lot containing 490 acres, more or less; that on or about February 1, 1912, the defendant, M. Rowe, entered upon the described land and began to cut, deaden, and destroy all the pine timber suitable for turpentine purposes growing and being upon the land; that Rowe was insolvent and unable to respond in damages to any judgment which petitioner might obtain against him for the damages which

he had done, and would do, if not restrained; that he had no
legal right, title, or claim to the timber and no authority to enter
upon the land, etc.; and that damages would be irreparable unless
the defendant was restrained. The prayer was for injunction, and
other relief. The plaintiff relied upon a certified copy of lease
from P. H. Gaskins, "conveying the timber on the land in question
to the plaintiff, duly witnessed and recorded," and by his abstract
traced title into said Gaskins through a chain of conveyances, etc.,
beginning with a plat and grant from the State to John Reynolds,
dated November 25, 1839. The defendant filed an answer and
cross-bill, wherein he alleged, among other things, that before the
1st day of January, 1912, he was in the actual open, notorious,
and physical possession of lot number 508 in the 6th district of
Berrien county, and was exercising legal and equitable rights thereto;
that he was solvent and able to respond to any judgment that
might be rendered against him; that on or about the ————— day
of February, 1912, the petitioner went upon the land and pro-
ceeded to cut, cup, box, and otherwise trespass upon the timber
upon said land, etc. The defendant also prayed for injunction and
other relief. In support of his answer and cross-bill the defendant
introduced in evidence the following: (1) Application of H. C.
Reynolds for appointment as administrator de bonis non cum
testamento annexo upon the estate of John Reynolds, deceased,
and the order appointing him as such. The application of H. C.
Reynolds shows that it was made on March 28, 1911, and the ap-
pointment bore date April 3, 1911. It also shows that John Rey-
nolds died in Greene county in 1846, more than 65 years before the
date of the application for letters of administration de bonis non,
etc. It also shows that John Reynolds died leaving a will, and
appointing Samuel D. Durham as his executor, and that Durham
qualified as such. (2) Administrator's deed from H. C. Reynolds,
administrator upon the estate of John Reynolds, deceased, to M.
Rowe (the defendant), which was dated October 3, 1911, and
duly recorded. The defendant also offered in evidence the affidavit
of one or more persons showing that in November, 1911, he took
physical possession of lot of land number 508, above described,
and erected fences upon it, etc.; that in 1891 Western & Gunn
went upon said lot and cut some sawmill timber therefrom, which
cutting lasted about one year; that after said acts of cutting, pos-

session, etc., no one ever attempted to exercise possession in any manner whatever on said land until M. Rowe, the defendant, took physical possession in November, 1911, and erected the fences as described above. The court, having previously passed an order restraining the defendant from trespassing upon the land in question, on the hearing continued the restraining order until the jury trial. The restraining order granted upon the cross-bill was dissolved. The defendant excepted.

*Knight, Chastain & Gaskins,* for plaintiff in error.

*H. J. Quincey,* contra.

HILL, J. (After stating the foregoing facts.)

1. The controlling question in this case is one of title. It is a contest between an unrecorded deed executed by John Reynolds in 1839 and the chain of titles thereunder, as set out in the abstract of title of the plaintiff in the court below, without possession, as against a deed executed to the defendant by the administrator of John Reynolds in 1911, properly executed and recorded, with possession thereunder by the defendant since October 3, 1911. The record in the case is unsatisfactory, and presents some unusual features on account of a lack of evidence to throw light upon the case. Sixty-five years after a testator died leaving a will and naming an executor, who qualified as such, an administrator de bonis non cum testamento annexo was appointed upon an application tending to show wild lands belonging to the testator's estate and unadministered. No attack seems to have been made on this application for administration or order appointing the administrator. An order was obtained by the administrator thus appointed, to sell the wild land in controversy, belonging to the testator, at private sale, and the defendant was a purchaser at this sale and went into possession under the administrator's deed, which was duly recorded. The deed executed to the purchaser was by the administrator merely as such, and not as administrator de bonis non cum testamento annexo. On the other hand, the plaintiff in the court below claimed under an unrecorded deed, the character of which is not disclosed by the record, executed by the testator seventy-two years previously to the execution, by his administrator, of the deed to the defendant. No possession was alleged or shown by the record in John Reynolds, either by the petition or the evidence, or in any of those holding under him, except in W. W. Gaskins, who was in possession

and sold the timber on the land in question about the year 1887 to Western & Gunn, who went into possession and remained for a year or more under W. W. Gaskins. Whether they ever yielded possession the record is silent. An heir at law of W. W. Gaskins, P. H. Gaskins, to whom the lot of land in controversy had been apportioned in kind, made a "timber lease" to the plaintiff, "conveying the timber on the land in question to the plaintiff, duly witnessed and recorded," but the lease itself is absent from the record; and whether the lessor was in possession at the time of the lease, or whether he put the plaintiff in the court below in possession, the record is equally silent. It is set out in the plaintiff's abstract of title that the lease was "duly witnessed and recorded," but the dates of the execution and record do not appear. Nor does the petition help us in this respect. It is nowhere alleged that the plaintiff was put in possession at the time of his purchase. The defendant was in possession, according to the record, under a recorded deed. Does the unrecorded deed of 1839 have priority over the recorded deed of 1911? We think not. The decision in the case of *Tucker* v. *Harris,* 13 *Ga.* 1 (58 Am. D. 488), controls this question. It was there held: "A purchaser at an administrator's sale, who has his deed first recorded, will gain the same preference over an unrecorded deed as if he had bought of the intestate in his lifetime." See *Gardner* v. *Grannis,* 57 *Ga.* 557 (10); *Wadley Lumber Company* v. *Lott,* 130 *Ga.* 140 (60 S. E. 836). The case of *McCaskill* v. *Stearns,* 138 *Ga.* 123 (74 S. E. 1034), cited by the defendant in error, is not in point.

It is true that two witnesses say in their affidavits that "for a number of years W. W. Gaskins and those claiming under him have had possession of lot of land number 508 in the 6th district of said State and county," but it does not appear how long "a number of years" was, or who those claiming under him were, or whether the plaintiff was one. It had been shown that Western & Gunn went into possession in 1887 or 1891, but there was no evidence to show that they ever went out of possession, or whether they still were in possession and claimed the rights under the timber lease from P. H. Gaskins. We are left entirely to conjecture as to this. Nor does the fact that the timber lease from P. H. Gaskins to the plaintiff in the court below was "duly witnessed and recorded" help the situation, there being no evidence that the

purchaser from the administrator bought with notice of the prior deed from the decedent under whom the maker of the lease claimed. It can not be said, therefore, that the "duly witnessed and recorded" lease of the land in controversy was notice to the defendant. Nor is the evidence of certain witnesses who testified for the defendant, "that for a number of years W. W. Gaskins and those claiming under him have had possession of lot 508 in the 6th district of said State and county," of benefit to the plaintiff, in the absence of such fact being brought home to the defendant. It is argued that the administrator could not sell property with title to which his intestate or testator had parted in his lifetime; that John Reynolds by his will devised any such lands as he owned at the time of his death. It is a sufficient answer to this contention to say that if John Reynolds himself, in his lifetime, had made two deeds to the property, one long before the other and unrecorded, and the other subsequently and recorded, the recorded deed would have priority, no possession or actual notice of possession being involved. The administrator's deed recited a consideration; and while it was argued that there was in fact none, there was no evidence to that effect.

Without discussing whether the decisions in the cases of *Bullock* v. *Dunbar,* 114 *Ga.* 754 (40 S. E. 783), *Hodges* v. *Stuart Lumber Co.,* 128 *Ga.* 733 (58 S. E. 354), and *Gorham* v. *Montfort,* 137 *Ga.* 134 (72 S. E. 893), are entirely reconcilable, it is sufficient for the purposes of the present case to say that it was not one dependent on an effort to invoke a presumption or inference of settlement of an estate, assent to a legacy, payment of purchase-money, or the like, in favor of one in possession of the property, but it rested upon the simple question of competition between two deeds—one made by a decedent and unrecorded, and the other made by his administrator and recorded. The court erred in granting an interlocutory injunction against the defendant, and in not granting an injunction against the plaintiff.

*Judgment reversed. All the Justices concur.*