A09A1751. BAXTER v. BAYVIEW LOAN SERVICING, LLC et al.
(688 SE2d 363)

BLACKBURN, Presiding Judge.

This case involves a dispute as to the existence and priority of competing security interests held by Ellis Baxter and Bayview Loan Servicing, LLC ("Bayview") in certain real property located on Peachtree Industrial Boulevard in DeKalb County ("the Property"). The trial court granted summary judgment against Baxter and in favor of Bayview on Baxter's claims (1) that an agreement between Baxter and his ex-wife and his son granted Baxter a mortgage on the Property; and (2) that, because Bayview took its deed to secure debt on the Property with constructive notice of Baxter's mortgage lien, Baxter's security interest was superior to that of Bayview. Baxter now appeals from that order, as well the trial court's order granting Bayview's motion to release the surety bond Bayview had posted as

578

a condition of cancelling Baxter's notice of lis pendens against the Property.[1]

For reasons explained below, we find that Baxter did hold a mortgage lien against the Property, and that a question of fact exists as to whether Bayview took its security deed with notice of that lien. We further find that, even if Bayview did have notice of Baxter's security interest in the Property, it is nevertheless entitled to be subrogated to the rights of a senior lien holder, whose debt was satisfied by a portion of the loan Bayview made against the Property. Finally, we hold that the trial court abused its discretion in unconditionally granting Bayview's motion for the return and release of its surety bond. Accordingly, we reverse the grant of summary judgment to Bayview and vacate and remand the order granting Bayview's motion for the return and release of its surety bond.

> On appeal from a grant of summary judgment, we conduct a de novo review of the evidence to determine if there exists a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, entitle the movant to judgment as a matter of law.

(Punctuation omitted.) *Bone v. The Children's Place.*[2]

So viewed, the record shows that from approximately 1991 until approximately September 2005, Baxter, together with his son and his ex-wife, operated Duncan Loudspeakers, Inc., d/b/a Audio Forest ("Duncan"). In 1998, Baxter and his son formed Fielding Partners, GP ("Fielding"), a general partnership whose sole purpose was to purchase and hold real property on which Duncan could operate its business. Baxter owned an 85% interest in Fielding and his son owned the remaining 15%. After Fielding purchased the Property using a loan obtained from the Small Business Administration, Duncan began operating its business out of a commercial building located thereon.

Fielding's only source of income was the rent paid to it by Duncan for the use of the commercial building. By summer of 2005, however, Duncan was experiencing financial difficulties and could not pay its rent. As a result, Fielding fell behind in its mortgage payments and the Property was threatened with foreclosure. Baxter, as the controlling partner in Fielding, decided to sell the Property, and received an offer on the same. After that contract failed to close,

---

[1] The cancellation of the lis pendens was necessary to facilitate Bayview's sale of the Property to a third party.

[2] *Bone v. The Children's Place*, 297 Ga. App. 367 (677 SE2d 404) (2009).

Baxter's ex-wife approached him about purchasing his 85% interest in Fielding. The parties then negotiated Baxter's sale of his interest in Fielding to his ex-wife. On October 5, 2005 the parties executed a document, captioned "Agreement," which provided: "It is agreed that the purchase price of . . . 85% of Fielding . . . is $265,000 and this purchase price is secured by the 85% interest in Fielding . . . including the [P]roperty. . . ." The document further stated:

> After the signing of this agreement . . . it may be necessary to sign additional papers to effect[uate] the intent of this document[. A]ll parties agree to in a timely manner finish all paper work and or sign all documents necessary to effect the transfer and completion of this agreement.

The purchase price for Baxter's interest in Fielding was based on the parties' valuation of the Property, which represented Fielding's sole asset. Although they never had the Property appraised, both Baxter and his ex-wife testified that they believed the Property was worth between $1.2 and $1.4 million. Additionally, although the October 5, 2005 writing did not reflect this fact, the parties believed that the ex-wife and son would be able to obtain a loan of approximately $950,000, secured by the Property. That loan amount would be used to pay off the existing mortgage on the Property and to pay Baxter the entire $265,000 owed him under the October 5 agreement.

In late October 2005, however, Baxter's ex-wife contacted him and told him that she and their son had only been able to obtain a loan of $578,500 on the Property, and that this amount would not provide the necessary funds to pay Baxter the $265,000 owed him under the October 5 agreement. The loan was necessary, however, to keep the Property from being foreclosed upon, and because Baxter was still the controlling partner of record in Fielding, his signature was required on the loan closing documents. Baxter agreed to participate in the loan closing only if his ex-wife and son would execute an amended agreement, which changed the purchase price of Baxter's share of Fielding to $275,000. The ex-wife and son acquiesced and on November 2, 2005 the parties executed two additional documents drafted by Baxter. The first document, captioned "Security Agreement," provided that Baxter was selling his interest in Fielding for $275,000; that the entire purchase price would be paid to Baxter no later than December 18, 2005;[3] that the purchase price

---

[3] According to Baxter, the $275,000 purchase price was to be due on December 18, 2005, because the parties all viewed the November 2, 2005 loan as a "bridge loan" – i.e., a loan to be

was secured by both "the 85% interest [in Fielding] . . . and the Property"; that this Security Agreement would be recorded as a lien against the Property; and that if the ex-wife and son failed to pay Baxter the full purchase price for his interest in Fielding by December 18, 2005, they would furnish him with a quitclaim deed to the Property.

The November 2 security agreement further provided:

> As a further inducement for this loan . . . [Baxter's ex-wife and son] agree to present [t]hemselves . . . at a reasonable time and with reasonable notice to re[-]sign formal legal papers to comply with the terms and intent of the documents here in [sic] comprised, which intent is stated that . . . at anytime if the first mortgage payment is not made . . . within 31 days of [its] due date the 85% interest in [F]ielding and the total interest in the [P]roperty (subject to the [refinancing] loan to Fielding) shall be transferred to Ellis Baxter. . . .

This security agreement was never recorded, apparently because it did not comply with the statutory requirements for recording.[4] Baxter and his ex-wife testified, however, that the purpose of the language requiring his ex-wife and son to "re-sign formal legal papers" was to require them to execute documents evidencing Baxter's mortgage on the Property in a form that met the legal requirements for recordation.[5]

On November 2, 2005, Fielding Partners closed a loan for $587,500 from LIB Properties, Inc. ("the LIB Loan"). Baxter, his ex-wife, and son each signed the closing documents in their capacities as partners in Fielding. In the deed to secure debt executed in favor of LIB Properties, each of those individuals covenanted that Fielding "has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record."

Baxter received $21,024.12 from the LIB Loan, which represented the amount of loan proceeds left after payment of the existing mortgage, closing costs, and other loan-related expenses.[6] When his

---

used to prevent foreclosure on the Property while Baxter's ex-wife and son worked to obtain a larger loan on the same.

[4] Under OCGA § 44-14-33, "[i]n order to admit a mortgage to record, it must be attested by or acknowledged before an officer as prescribed for the attestation or acknowledgment of deeds of bargain and sale; and, in the case of real property, a mortgage must also be attested or acknowledged by one additional witness."

[5] Thus, it appears that part of the relief Baxter sought in this lawsuit was a judgment granting him a recordable mortgage.

[6] On November 7, 2005 a quitclaim deed, dated November 4, 2005, was recorded in

ex-wife and son failed to pay him the remainder of the $275,000 owed him for his interest in Fielding, Baxter filed suit against them on February 17, 2006. In his complaint, Baxter asserted a claim for breach of contract and sought either: (i) a declaratory judgment that he had a valid security interest in the Property in the amount of the unpaid balance of the purchase price ($253,975.88); or, alternatively, (ii) a reformation of the written agreements to reflect the parties' "true intent" — i.e., that the unpaid balance of the purchase price for Baxter's interest in Fielding was to be secured by an interest in the Property "second only to the interest of the refinancing lender [LIB Properties]." Also on February 17, 2006, Baxter filed a notice of lis pendens in DeKalb County asserting an interest in the Property, and that lis pendens was recorded on February 21, 2006.

Six days later, on February 27, 2006, Fielding, now composed solely of Baxter's ex-wife and son, closed a new loan on the Property from Interbay Funding Company, LLC ("Interbay"). Of the $735,000 loan amount, $616,663.99 was used to satisfy the security deed held by LIB Properties, and Baxter's ex-wife and son received $91,678.87. Prior to closing this loan, Interbay conducted a title search on the Property, but did not discover Baxter's lis pendens. On August 28, 2006, Interbay assigned its deed to secure debt on the Property to Bayview, as Interbay's successor in interest.

Several months after filing suit, Baxter discovered the existence of the Interbay deed to secure debt. Baxter's counsel then contacted the attorneys who had conducted the Interbay loan closing, informing them of Baxter's asserted interest in the Property. The closing attorneys forwarded this information to Interbay, who filed a motion to intervene in the lawsuit between Baxter and his ex-wife and son. Interbay thereafter filed a motion to substitute Bayview, as the real party in interest, as the intervenor. Over Baxter's objection, the trial court granted both motions, and allowed Bayview to intervene as a defendant in the action.

While the motion to intervene was pending, Bayview foreclosed on the Property. After being allowed to intervene, Bayview moved to cancel Baxter's notice of lis pendens, to facilitate the sale of the Property to a third party for approximately $1 million. In exchange, Bayview agreed to post a surety bond in an amount sufficient to protect Baxter's claimed interest in the Property. The trial court granted the motion to cancel the lis pendens, but required Bayview

---

DeKalb County, which deed recited that "Fielding Partners . . . comprised of Ellis F. Baxter and Andrew F. Baxter" transferred its interest in the Property to "Fielding Partners . . . now comprised of Andrew F. Baxter and Jo A. Baxter." The copy of the quitclaim deed appearing in the record, however, contains no signatures.

to post a surety bond in the amount of $380,963.82.[7]

Bayview subsequently moved for summary judgment, arguing that (1) the series of documents constituting the agreement between Baxter and his ex-wife and son ("the Agreement") did not grant Baxter a mortgage on the Property; (2) any security interest Baxter did have was subordinate to that of Bayview, as the successor in interest to Interbay; and (3) even if Bayview's security deed did not otherwise have priority over Baxter's interest in the Property, the doctrine of equitable subrogation entitled Bayview to a first priority lien for the amount of its loan that was used to satisfy the LIB Properties' deed to secure debt. The trial court granted the motion for summary judgment, as well as Bayview's subsequent motion for release and return of the surety bond it had posted. Baxter now appeals from both of those orders.[8]

1. The trial court's order granting Bayview's motion for summary judgment contained no findings of fact or conclusions of law. On appeal, however, Baxter argues that the evidence cannot support a grant of summary judgment on any of the three grounds urged by Bayview. We agree.

(a) We first address whether the Agreement between Baxter and his ex-wife and son granted Baxter a mortgage on the Property.

Under Georgia law, a mortgage is created when a property owner uses that property as security for his debt to another. See *Cherokee Ins. Co. v. Gravitt*.[9] Because a mortgage merely grants a lien against the property, as opposed to passing title to the same, "[n]o particular form is necessary to constitute a mortgage." OCGA § 44-14-31. See also OCGA § 44-14-30 ("[a] mortgage in this state is only security for a debt and passes no title"). All that is necessary is that the document "clearly indicate the creation of a lien and . . . specify the debt for which it is given and the property upon which it is to take effect." OCGA § 44-14-31. The Agreement at issue here clearly satisfies these requirements, because the documents identified the debt (the purchase price of Baxter's interest in Fielding); stated that the debt was to be secured by both the 85% interest in Fielding and by the Property, which constituted Fielding's sole asset; and clearly identified the Property. Additionally, the November 2, 2005 security agreement explicitly stated that it would constitute a lien against the

---

[7] This amount represented 1.5 times Baxter's claimed security interest of $253,975.08.

[8] After Bayview received summary judgment in its favor, Baxter's claims against his ex-wife and son proceeded to a bench trial, with the trial court finding in favor of Baxter. Although the ex-wife and son originally appealed from the trial court's judgment, that appeal was dismissed after they failed to file a brief and enumeration of errors. See Court of Appeals Rule 23 (a).

[9] *Cherokee Ins. Co. v. Gravitt*, 187 Ga. App. 179, 182-183 (369 SE2d 779) (1988).

YALE LAW LIBRARY

Property and that it would be filed as such. Thus, the Agreement reflects the creation of a lien against the Property, in favor of Baxter, as security for Baxter's sale of his interest in Fielding.

Bayview, however, argues that the language obligating Baxter's ex-wife and son to execute any additional documents necessary to effectuate the intent of the Agreement demonstrates that the Agreement did not create a lien. Instead, Bayview insists that this language merely showed an intent to create a lien in the future, at the time the additional documents were executed. Because no additional documents were ever executed, no lien was created.

This argument fails, however, because it confuses that which is necessary to create a mortgage lien, effective between the parties to the agreement, with that which is necessary to place such a mortgage in a form capable of being recorded. As the foregoing discussion shows, while Georgia law requires that a mortgage be in a certain form to be recordable, it does not make the existence of a mortgage dependent upon whether it satisfies the legal requirements for recording. Whether a mortgage is in recordable form, therefore, is different from the question of whether a mortgage exists — i.e., whether a mortgage was created by a particular writing. See *Hawes v. Glover*[10] ("[a] mortgage is good as between the parties without any attesting witness" and "[a] mortgage is perfectly valid as between the parties thereto, though never recorded"); *Jackson v. Bank One*[11] (the "grantee of a security deed is under no duty to the grantor to have the deed recorded; as between the original parties, the deed is valid irrespective of whether it is recorded or not") (punctuation omitted); OCGA § 44-2-2 (c) ("[n]othing in this Code section shall be construed to affect the validity or force of any deed, mortgage, judgment, or lien of any kind between the parties thereto").

Both the plain language of the Agreement and the parties' testimony show that while the parties anticipated executing additional documents, the purpose of such documents was not to create a mortgage. Rather, their purpose was to evidence, in a legally recordable form, the mortgage created by the Agreement. Thus, "[a]lthough the instrument was not in a typical mortgage form," the Agreement granted Baxter a mortgage on the Property because it "clearly indicate[d] . . . the creation of a lien, and specifie[d] the debt for which it [was] given, and the property upon which it [was] to take effect." *Ray v. Atkins*.[12] See also *Daniel v. State*[13] ("[a]ny language

---

[10] *Hawes v. Glover*, 126 Ga. 305, 316-317 (55 SE 62) (1906).
[11] *Jackson v. Bank One*, 287 Ga. App. 791, 793 (2) (652 SE2d 849) (2007).
[12] *Ray v. Atkins*, 205 Ga. App. 85, 87 (1) (421 SE2d 317) (1992).
[13] *Daniel v. State*, 63 Ga. App. 12, 14 (10 SE2d 80) (1940).

showing an intent to mortgage (creation of a lien) is sufficient").

(b) Having found that the Agreement granted Baxter a mortgage on the Property, we next address whether his security interest was superior to that of Bayview. Given that Baxter's mortgage was never recorded, his interest can be considered superior only if Bayview took its deed to secure debt with notice of Baxter's claim against the Property. See OCGA § 44-2-2 (b) (mortgages and other liens against property are effective against third parties who take without notice of such liens "only from the time they are filed for record in the clerk's office"); *Douglass v. McCrackin*[14] ("A mortgage, not recorded, has no priority of lien as against the purchaser of mortgaged property, unless such purchaser had notice of the unrecorded mortgage."). Baxter argues that his notice of lis pendens, filed ten days before the closing of the loan which resulted in Bayview's deed to secure debt,[15] and recorded six days prior to that loan closing, constituted constructive notice to Bayview of his security interest in the Property. From the record before us, it appears that there exists a question of fact as to whether Bayview took its deed to secure debt with constructive notice of Baxter's mortgage.

"[T]he phrase 'lis pendens' means, literally, pending suit. *Its purpose is one of notice*, that is, the aim is to inform prospective purchasers that real property is directly involved in a pending lawsuit, in which lawsuit there is some relief sought in regard to that particular property." (Citation and punctuation omitted; emphasis supplied.) *Boca Petroco v. Petroleum Realty II.*[16] One who purchases the property with notice of the lis pendens (i.e., after the lis pendens has been filed in accordance with OCGA § 44-14-610) is then bound to the outcome of the pending litigation, even though they were not otherwise a party to it. See *Vance v. Lomas Mtg. USA;*[17] *Wilson v. Blake Perry Realty Co.*[18]

It is undisputed that Baxter filed his notice of lis pendens in accordance with OCGA § 44-14-610 on February 17, 2006, and that the same was recorded on February 21, 2006. This fact, therefore, serves as evidence that Bayview had constructive notice of Baxter's interest in the Property at the time it received its security deed. See

---

[14] *Douglass v. McCrackin*, 52 Ga. 596, 598 (1874).

[15] Because Bayview took an assignment of the deed to secure debt received by Interbay at the February 27, 2006 loan closing, it stands in the shoes of Interbay for purposes of determining the priority of security interests in the Property. See, e.g., *Rossville Bank v. Bankers First Sav. Bank*, 227 Ga. App. 880, 882 (1) (490 SE2d 548) (1997).

[16] *Boca Petroco v. Petroleum Realty II*, 285 Ga. 487, 488 (678 SE2d 330) (2009).

[17] *Vance v. Lomas Mtg. USA*, 263 Ga. 33, 35 (1) (426 SE2d 873) (1993).

[18] *Wilson v. Blake Perry Realty Co.*, 219 Ga. 57, 59 (131 SE2d 555) (1963).

YALE LAW LIBRARY

*Kennedy v. W. M. Sheppard Lumber Co.*[19] ("[a] lis pendens becomes effective upon filing in the office of the superior court clerk").

Bayview attempts to avoid this conclusion by arguing that, under Georgia law, a notice of lis pendens cannot serve as constructive notice of a prior, unrecorded mortgage on real property. The cases which Bayview relies on to support this argument, however, were decided over a century ago, under the common law, and well before the 1939 enactment of Georgia's lis pendens statute. See *Moody v. Millen;*[20] *Douglass*, supra, 52 Ga. at 599; Ga. L. 1939, p. 345, § 1. Moreover, Bayview's argument directly contravenes the well-established principle that:

> [A] purchaser of real property is not only charged with notice of every fact shown by the records in the chain of title, but is also "presumed to know every other fact which the [title] examination suggested." (Citations and punctuation omitted.) *Deljoo v. SunTrust Mtg.*[21] Thus, when information appears in the county's records or occurs during the sale of real property that would excite a reasonable purchaser's attention regarding the existence of a lien or other issue affecting the title to the property, the purchaser has a duty to make a further inquiry. OCGA § 23-1-17. The notice which is sufficient to create this duty to inquire is also constructive notice of "everything to which it is afterwards found that such inquiry might have led." Id. It follows that, once the duty to inquire arises, a purchaser's ignorance of a fact, such as a lien or other issue affecting the title to the property, due to his or her negligence in failing to make the additional inquiry will be the equivalent of the purchaser's constructive knowledge of that fact. Id.

(Punctuation omitted.) *Gallagher v. The Buckhead Community Bank.*[22] See also *Mabra v. Deutsche Bank &c.*[23] ("[t]o qualify as a bona fide purchaser for value without notice, a party must have neither actual nor constructive notice of the matter at issue") (punctuation omitted).

Bayview, however, argues that it had no constructive notice of Baxter's asserted security interest in the Property because a title

---

[19] *Kennedy v. W. M. Sheppard Lumber Co.*, 261 Ga. 145, 147 (2) (401 SE2d 515) (1991).

[20] *Moody v. Millen*, 103 Ga. 452, 457 (30 SE 258) (1898).

[21] *Deljoo v. SunTrust Mtg.*, 284 Ga. 438, 439 (668 SE2d 245) (2008).

[22] *Gallagher v. The Buckhead Community Bank*, 299 Ga. App. 622, 626 (1) (683 SE2d 50) (2009).

[23] *Mabra v. Deutsche Bank &c.*, 277 Ga. App. 764, 766 (2) (627 SE2d 849) (2006).

search conducted prior to the February 27, 2006 loan closing did not reveal the lis pendens. Although the results of this title search are contained in a title insurance commitment dated the same day as the loan closing, the record does not contain a copy of the actual title search and thus contains no evidence of the date on which that search was performed. Nor is there any other evidence indicating whether the failure to discover the lis pendens resulted from negligence or a lack of due diligence on the part of either Bayview or its agents. Based upon the current evidence, therefore, it appears that there exists a factual question as to whether Bayview had constructive notice of Baxter's security interest.

Because the filing and recording of the notice of lis pendens constitute a prima facie showing that Bayview had constructive notice of Baxter's mortgage lien, on remand Bayview will need to come forward with evidence showing that it lacked such notice. Such evidence would include: (i) the date on which the title search was actually conducted; (ii) if it occurred prior to February 17, whether a subsequent, "updated" title search was performed in advance of the loan closing (see *Kennedy*, supra, 261 Ga. at 147 (2) (lis pendens effective from the time it is filed)); (iii) whether Bayview and its agents complied with generally accepted industry standards and practices in choosing the date on which to conduct their title search and/or in choosing whether to perform an updated search (see *Gallagher*, supra, 299 Ga. App. at 627 (2)); (iv) whether Bayview and its agents conformed with such generally accepted standards and practices in actually performing the title search and any updates (see id.); and (v) whether the failure to discover the lis pendens resulted from some circumstance beyond Bayview's control — e.g., a delay or failure by the clerk's office in indexing the record. See *Byers v. McGuire Properties*;[24] *Hayes v. EMC Mtg. Corp.*[25] Assuming that Bayview comes forward with evidence sufficient to create an issue of fact, the question of whether Bayview took its deed to secure debt with constructive notice of Baxter's security interest in the Property would be for the jury.

(c) As noted above, $616,663.99 of the Bayview loan was used to satisfy the deed to secure debt held by LIB Properties. Moreover, Baxter has specifically acknowledged — in the parties' Agreement, in his complaint filed below, and at his deposition — that his mortgage on the Property was subservient to the LIB Loan. In light of these facts, Bayview argues that, even if its deed to secure debt is otherwise subordinate to Baxter's mortgage, it is entitled to be

---

[24] *Byers v. McGuire Properties*, 285 Ga. 530, 531 (679 SE2d 1) (2009).
[25] *Hayes v. EMC Mtg. Corp.*, 296 Ga. App. 709, 711 (675 SE2d 594) (2009).

subrogated to the senior lien of LIB Properties in the amount of $616,663.99. We agree.

> The principle of equitable subrogation has long been recognized in this State. See *Merchants & Mechanics Bank v. Tillman*.[26] In substance, the principle provides that in certain circumstances, a lender who pays off the lien of a senior creditor may step into the shoes of the senior creditor as to the priority of the senior creditor's lien. As explained at length by our Supreme Court in *Davis v. Johnson*:[27] Where one advances money to pay off an encumbrance on realty either at the instance of the owner of the property or the holder of the encumbrance, either upon the express understanding or under circumstances under which an understanding will be implied that the advance made is to be secured by the senior lien on the property, in the event the new security is for any reason not a first lien on the property, the holder of the security, if not chargeable with culpable or inexcusable neglect, will be subrogated to the rights of the prior encumbrancer under the security held by him, unless the superior or equal equity of others would be prejudiced thereby. . . .

(Punctuation omitted.) *Greer v. Provident Bank*.[28]

"Here, [Bayview], as assignee of [Interbay], meets the requirement of the rule set forth in *Davis*[, supra, 241 Ga. at 438]. It paid off the lien of a senior creditor — [LIB Properties] — and may therefore 'step into the shoes of the senior creditor as to the priority of the senior creditor's lien.' " *Hayes*, supra, 296 Ga. App. at 711. Additionally, Bayview is entitled to equitable subrogation even if it had constructive notice of Baxter's mortgage.

> [K]nowledge of the existence of an intervening encumbrance will not alone prevent the person advancing the money to pay off the senior encumbrance from claiming the right of subrogation *where the exercise of such right will not in any substantial way prejudice the rights of the intervening encumbrancer.*

(Punctuation omitted; emphasis supplied.) *Greer*, supra, 282 Ga. App. at 568. See also *Byers*, supra, 285 Ga. at 537 (4) ("an agreement,

---

[26] *Merchants & Mechanics Bank v. Tillman*, 106 Ga. 55 (31 SE 794) (1898).
[27] *Davis v. Johnson*, 241 Ga. 436, 438 (246 SE2d 297) (1978).
[28] *Greer v. Provident Bank*, 282 Ga. App. 566, 568 (639 SE2d 377) (2006).

express or implied, [that one who pays the debt owed a senior creditor will] be subrogated to the rights and remedies of [that] creditor . . . is sufficient to overcome constructive notice of [an] intervening lien") (citations and punctuation omitted).

"We cannot say that [Bayview's] exercise of the right of subrogation would prejudice [Baxter's] rights where[,] as here[,] he remains second in order of priority," after the amount secured by the LIB Loan. *Hayes*, supra, 296 Ga. App. at 711-712. And, given Baxter's express acknowledgment that his mortgage would be subordinate to the LIB Loan, "it can not be said that [he took his] lien . . . in reliance upon his status as senior lienor." (Punctuation omitted.) Id. at 712. Under the doctrine of equitable subrogation, therefore, we find that even if Bayview took its security deed with notice of Baxter's lien against the Property, it has a first priority security interest in the Property in the amount of $616,663.99.

2. Baxter further asserts that the trial court erred in granting Bayview's motion for the unconditional release and return of the surety bond it had posted as a condition of obtaining a cancellation of Baxter's lis pendens.

As a general rule, the question of whether to require the giving of security is within the discretion of the trial court. See *Berry v. City of East Point*;[29] *Reid v. Reid*.[30] An abuse of that discretion occurs where the trial court refuses a party's request for a surety bond despite a showing that, in the absence of such a bond or other security, the party's interests may be irreparably harmed. See *Ebon Foundation v. Oatman*.[31] Given that Baxter's lis pendens was cancelled and the Property was sold to a third party, the surety bond was necessary to protect Baxter's interests. The trial court, therefore, abused its discretion in unconditionally releasing the same.[32]

We recognize, however, that the appropriate amount of the surety bond required might be impacted by our holding in Division 1 (c), that Bayview has a first priority security interest in the Property in the amount of $616,663.99. For that reason, we vacate the trial court's order releasing and returning Bayview's surety bond, and

---

[29] *Berry v. City of East Point*, 277 Ga. App. 649, 650 (1) (627 SE2d 391) (2006).

[30] *Reid v. Reid*, 246 Ga. 592, 593 (4) (272 SE2d 685) (1980).

[31] *Ebon Foundation v. Oatman*, 269 Ga. 340, 344 (3) (e) (498 SE2d 728) (1998).

[32] Although the trial court's order releasing the bond was premised on the fact that Baxter had not filed an appeal as to its summary judgment order, this reasoning ignored the fact that Baxter was entitled to delay his appeal from that order until after the trial of his claims against his ex-wife and son. "Where a summary judgment is granted in a case as to one or more but fewer than all the claims or parties, the losing party may without certification directly appeal within 30 days of the judgment or he may appeal after rendition of final judgment in the case." (Citations and punctuation omitted.) *Newton v. K. B. Property Mgmt. of Ga.*, 166 Ga. App. 901, 903 (306 SE2d 5) (1983).

remand for a determination as to what bond amount is necessary to protect Baxter's interest. Upon making that determination, the trial court shall require Bayview to post a surety bond.

For the reasons set forth above, we reverse the trial court's order granting summary judgment to Bayview, and we vacate and remand the trial court's order granting the release and return of Bayview's surety bond.

*Judgment reversed in part and vacated and remanded in part. Adams and Doyle, JJ., concur.*

DECIDED DECEMBER 11, 2009.

*Gibson, Deal & Fletcher, John W. Gibson*, for appellant.

*Paul, Hastings, Janofsky & Walker, Stefanie H. Jackman, J. Allen Maines*, for appellees.