A11A1352, A11A1353. BAYVIEW LOAN SERVICING, LLC
v. BAXTER; and vice versa.

(720 SE2d 292)

DILLARD, Judge.

This is the second time this case has appeared before us. In *Baxter v. Bayview Loan Servicing, LLC ("Baxter I")*,[1] we reversed the grant of summary judgment to Bayview and remanded the case to the superior court to consider whether Bayview took a security deed on certain real property with constructive notice of Baxter's mortgage lien on the same property.[2] On remand, Baxter filed a motion for summary judgment, which the trial court granted. In a subsequent order, the trial court calculated the value of Baxter's interest in the subject property using the difference between the purchase price at the foreclosure sale and Bayview's subrogated first-priority interest. The only issues before us in these cross-appeals are whether the trial court (1) properly determined the priority of the parties' security interests in the real property and (2) accurately calculated the junior lienholder's interest in the property following a foreclosure sale. Concluding that it did, we affirm.

Our story begins in October 2005, when Ellis Baxter entered into a contract with his ex-wife and son pursuant to which he sold his interest in Fielding Partners, a general partnership consisting previously of only himself and his son.[3] The purchase price of the general partnership was secured by certain real property (the "Property").[4] When Baxter sued his ex-wife and son alleging breach of the agreement, he filed, on February 17, 2006, a notice of lis pendens, asserting an interest in the Property,[5] which was recorded

---

[1] 301 Ga. App. 577 (688 SE2d 363) (2009).

[2] *Id.* at 584-86 (1) (b).

[3] *Id.* at 578-79.

[4] *Id.* The contractual agreement creating Baxter's security interest in the Property was never recorded. *Id.* at 580.

[5] *Id.* at 581.

on February 21, 2006.[6]

On February 27, 2006, the predecessor-in-interest to Bayview Loan Servicing, LLC (Bayview and its predecessor, collectively, "Bayview"), closed a loan in favor of Fielding Partners ("Fielding Loan"), now comprised solely of Baxter's ex-wife and son. The Fielding Loan was secured by a deed to secure debt on the Property.[7] A portion of the Fielding Loan was then used to satisfy a preexisting security deed held by LIB Properties, Inc. ("LIB"), and Baxter's ex-wife and son received the remainder.[8] Bayview's title search prior to the closing did not discover Baxter's lis pendens.

Upon learning of the lis pendens and Baxter's asserted lien on the Property, Bayview successfully moved to intervene in the lawsuit between Baxter and his ex-wife and son.[9] In the interim, Bayview foreclosed on the Property under the power of sale in the security deed, bid on the Property at an advertised foreclosure sale, and purchased the same for $780,977. Bayview subsequently moved to cancel Baxter's lis pendens in order to facilitate the sale of the Property to a third party.[10] The trial court permitted Bayview to cancel the lis pendens upon posting a surety bond, and Bayview sold the Property to the third party for $1,050,000.[11]

Bayview then moved for summary judgment in the lawsuit, arguing that (1) the contractual agreement that Baxter executed with his ex-wife and son failed to grant Baxter a lien on the Property; (2) if Baxter did have a lien on the Property, it was subordinate to that of Bayview's security deed; and (3) in any event, the doctrine of equitable subrogation entitled Bayview to a first-priority security interest for the amount of its loan that was used to satisfy the preexisting deed to secure debt in favor of LIB.[12] The trial court granted Bayview's motion in a summary opinion.[13]

In *Baxter I*, we held that Baxter created (via the contractual agreement) a valid mortgage lien in his favor against the Property[14] and that, regardless of which interest was superior, Bayview was subrogated to the rights of LIB and, therefore, held a first-priority security deed on the Property in the amount equal to that secured by

---

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.* at 581-82.

[12] *Id.* at 582.

[13] *Id.* at 582 (1). Baxter's claims against his ex-wife and son proceeded to a bench trial, and the trial court issued a judgment in Baxter's favor. *Id.* at 582, n. 8.

[14] *Id.* at 582-84 (1) (a).

the preexisting LIB loan.[15] As to the priority of the remainder of Bayview's interest, we reversed the grant of summary judgment to Bayview and remanded the case to the superior court to consider whether Bayview took its security deed with constructive notice of Baxter's mortgage lien.[16] In so doing, we held that the recorded lis pendens functioned as prima facie evidence of Bayview's notice, but nonetheless noted that the record did not contain Bayview's title search and was otherwise devoid of evidence as to the date on which the title search was performed and/or any circumstances tending to explain why the lis pendens was not discovered.[17]

On remand, Baxter filed, for the first time, his own motion for summary judgment, arguing that the lis pendens placed Bayview on constructive notice of his claimed security interest as of the date it was recorded, rendering his security interest superior to that of Bayview's as a matter of law.

Bayview opposed the motion, asserting that it acted diligently in closing the Fielding Loan but, due to circumstances outside of its control, was unable to discover the lis pendens. Bayview still failed to produce a copy of the title search, instead submitting two affidavits in support of its argument. In the first, a partner in the law firm that served as closing attorney for the Fielding Loan averred that it was firm policy to update a title search conducted more than one month before a closing; that this policy conformed with generally accepted industry standards and practices; and that the firm conducted an updated title search on the Property in February 2006, with an effective date of January 10, 2006, which did not reveal the lis pendens.[18] In the second affidavit, the chief deputy clerk of the superior court responsible for managing the lis pendens public records averred that Baxter's lis pendens, filed February 17, 2006 and recorded February 21, 2006, was not made available on the public-information database until March 13, 2006. And as noted by the trial court, the clerk did not assert that the delay was abnormal, nor did he contend that any error had occurred in the clerk's office,

---

[15] *Id.* at 586-88 (1) (c).

[16] *Id.* at 584-86 (1) (b).

[17] *Id.* at 586 (1) (b).

[18] Baxter argues that the affidavit at issue contained inadmissible hearsay and lacked probative value because the affiant did not aver that he personally conducted the title search, nor did Bayview attach to the affidavit (or tender in the record) a copy of the title search upon which the affiant relied. *See* OCGA § 9-11-56 ("Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."); *Morgan v. Horton*, 308 Ga. App. 192, 197 (2) (707 SE2d 144) (2011) (refusing to consider expert's assertions made in reliance on a manual, the contents of which were not attached to the affidavit nor contained in the record). We need not consider this argument because, as explained infra, the averments in the affidavit have no impact on our holding.

but inferred only that the lag time between the recording of the lis pendens and its posting on the public database was a normal part of the indexing process.

The trial court granted summary judgment to Baxter after concluding that Bayview had constructive notice of Baxter's claim of lien on the Property at the time it took the deed to secure debt, rendering Baxter's lien superior to the unsubrogated portion of Bayview's security interest. In a subsequent order, the trial court also calculated the value of Baxter's interest using the difference between the price Bayview paid for the Property at the foreclosure sale and Bayview's subrogated first-priority interest. These cross appeals follow.

## Case No. A11A1352

In Case No. A11A1352, Bayview appeals the trial court's grant of summary judgment to Baxter on the issue of constructive notice. Specifically, Bayview asserts it overcame the prima facie evidence that it had constructive notice of Baxter's mortgage lien and created, at the very least, a genuine issue of material fact (through its proffered evidence) that the lis pendens was not available for public viewing until after the loan closing had occurred. We disagree.

It is well established that "a [lien] takes effect, as against the interests of third persons without notice, from the time it is filed for record in the clerk's office."[19] Thus, "[a]ll that is required of the [lien holder] and all that he can do is to file his [lien] for record."[20] And while the documents creating Baxter's mortgage lien were themselves not in recordable form, his filing of the lis pendens was—as we held in *Baxter I*—the functional equivalent of filing the lien for the purpose of providing notice of his claimed interest in the Property, and the lis pendens became effective upon its recording.[21] Thus, once recorded, the lis pendens placed Bayview on constructive notice of Baxter's claim of lien, regardless of whether it had been indexed and/or placed on the public database by the time Bayview conducted a title search.[22]

Indeed, it is undisputed that Baxter filed his notice of lis pendens

---

[19] *Leeds Building Products, Inc. v. Sears Mortgage Corp.*, 267 Ga. 300, 302 (2) (477 SE2d 565) (1996) (punctuation omitted); *see* OCGA § 44-2-2 (b); *Byers v. McGuire Prop., Inc.*, 285 Ga. 530, 531-32 (1) (679 SE2d 1) (2009).

[20] *Leeds*, 267 Ga. at 302 (2) (punctuation omitted).

[21] *Baxter I*, 301 Ga. App. at 584 (1) (b); *see* OCGA §§ 44-14-30, 44-14-610; *Kennedy v. W. M. Sheppard Lumber Co., Inc.*, 261 Ga. 145, 147 (2) (401 SE2d 515) (1991) ("A lis pendens becomes effective upon filing in the office of the superior court clerk.").

[22] *See Leeds*, 267 Ga. at 302 (2) (holding that a third-party purchaser of real property was "in no better position because he closed on his property after the . . . deed was filed with the clerk of court, but before the deed was indexed").

on February 17, 2006, that the lis pendens was recorded on February 21, 2006, and that Bayview closed on the Fielding Loan on February 27, 2006. And Bayview has not presented any evidence tending to establish that the lis pendens was defective or that it was otherwise legally insufficient to provide notice.[23] It follows, then, that Bayview accepted its deed to secure debt with constructive notice of Baxter's mortgage lien as a matter of law.

Bayview nonetheless argues that our opinion in *Baxter I* gave it an opportunity to escape the foregoing result by showing that its failure to discover the lis pendens was due to no fault of its own. And while we recognize that the direction given on remand in *Baxter I* suggested that certain evidence might be sufficient to defeat summary judgment on the issue of constructive notice, that opinion should not and cannot be read to conflict with the well-established Supreme Court precedent set forth supra that otherwise controls the facts of this case. In sum, because Bayview established only that it failed to discover the properly filed and recorded lis pendens because same had not yet been placed on the public database, it simply cannot overcome the conclusion that it had constructive notice of the lis pendens as *a matter of law*.[24] Thus, the trial court properly determined that Baxter's mortgage lien is superior to the unsubrogated portion of Bayview's security deed.

## Case No. A11A1353

In Case No. A11A1353, Baxter argues that the trial court erred in determining the value of his interest in the Property. In its damage award, the trial court calculated Baxter's interest using the difference between the purchase price of the Property at the foreclosure sale ($780,977) and Bayview's subrogated first-priority interest ($616,663.99), ultimately concluding that Baxter was entitled to a maximum award of $164,313.01, not to exceed the unpaid amount of Baxter's judgment against his ex-wife and son.

On appeal, Baxter argues that the trial court erred in using the purchase price of the Property at the time of foreclosure in order to calculate his interest. He asserts instead that the trial court was

---

[23] *Compare Gallagher v. Buckhead Community Bank*, 299 Ga. App. 622, 626-27 (2) (683 SE2d 50) (2009) (purchaser of real property did not have constructive notice of a judgment lien against the seller that fell outside of the chain of title and, unbeknownst to purchaser, was filed under a name different from that used by the seller during the transaction); *Hopkins v. Virginia Highland Associates, L. P.*, 247 Ga. App. 243, 246-47 (1) (541 SE2d 386) (2000) (a deed that fails to comport with the statutory requirements, even if recorded, is not constructive notice to a subsequent bona fide purchaser).

[24] *Leeds*, 267 Ga. at 302; *Willie v. Hines-Yelton Lumber Co.*, 167 Ga. 883 (146 SE 901) (1929); *Georgia Primary Bank v. Atlanta Paving, Inc.*, 309 Ga. App. 851, 853-54 (1) (711 SE2d 409) (2011).

required to calculate his interest by subtracting Bayview's subrogated interest from the fair market value of the Property at the time the lis pendens was removed, which he contends was represented by the price at which the Property sold to the third party ($1,050,000).[25] We disagree.

As decided in *Baxter I*, Bayview held a subrogated first-priority interest in the Property and, therefore, was the senior creditor at the time of foreclosure.[26] It is well established that "[w]here the holder of the senior encumbrance on realty forecloses on the property, the purchaser obtains title free of all inferior liens and any junior liens attach to the surplus of the proceeds."[27] It follows, then, that Baxter's mortgage lien was legally extinguished at the time of the foreclosure and, at that point, Baxter's claim was transferred to the surplus of funds remaining after Bayview's first-priority interest had been satisfied.[28] And because both the purchase price at the foreclosure sale ($780,977) and the value of Bayview's subrogated interest ($616,663.99) were undisputed, the trial court properly held that Baxter was entitled to a maximum damage award of $164,313.01.[29]

*Judgment affirmed. Mikell, C. J., and Smith, P. J., concur.*

---

[25] Both parties contend that the opposing party waived various arguments made on appeal; however, we conclude that each party properly preserved their respective arguments in the trial court.

[26] *Baxter I*, 301 Ga. App. at 586-88 (1) (c).

[27] *Murray v. Chulak*, 250 Ga. 765, 771 (3) (300 SE2d 493) (1983).

[28] *See generally Federal Land Bank of Columbia v. Bank of Lenox*, 192 Ga. 543, 546 (2) (16 SE2d 9) (1941) ("It is the general rule that a sale under a regularly exercised power in a security deed or mortgage is equivalent to a foreclosure proceeding, and not only extinguishes the right of redemption, but divests all junior mortgages and other junior incumbrances on the property."); *Dodson v. Farm & Home Sav. Ass'n*, 208 Ga. App. 568, 569 (430 SE2d 880) (1993) ("Surplus moneys arising on foreclosure stand in place of the land itself as to liens thereon or vested rights therein."); *Bob Parrott, Inc. v. First Palmetto Bank*, 133 Ga. App. 447, 449 (2) (211 SE2d 401) (1974) ("The holder of a subordinate loan deed may claim surplus funds accruing from the foreclosure of the first loan.").

[29] Baxter argues that Bayview failed to prove with competent evidence that it paid fair market value for the Property at the foreclosure sale. Baxter's argument is irrelevant under the procedural posture of this case, since his lien was extinguished and his claim attached to the surplus of the proceeds—the amount of which is undisputed—at the time of the foreclosure sale. *See Murray*, 250 Ga. at 771 (3). Baxter has made no challenge to the manner in which the foreclosure sale was advertised and/or conducted. *See generally Giordano v. Stubbs*, 228 Ga. 75, 78 (1) (184 SE2d 165) (1971) ("All that is required of [a priority deed holder] is to advertise and sell the property according to the terms of the instrument, and that the sale be conducted in good faith." (punctuation omitted)); *Kennedy v. Gwinnett Commercial Bank*, 155 Ga. App. 327, 330 (1) (270 SE2d 867) (1980) ("[T]he duty to sell the property according to the terms of the deed and to conduct the sale in good faith does not include a requirement that a specific amount such as the fair market value of the property be obtained."). If Baxter believed the fair market value of the Property to be above what Bayview paid at the foreclosure sale, Baxter could have protected his junior lien by submitting a competitive bid to purchase the Property at that time.

DECIDED NOVEMBER 22, 2011.

*King & Spalding, Emily L. Shoemaker, Paul Hastings, J. Allen Maines, Shauna T. Phillips,* for appellant.
*Gibson, Deal & Fletcher, John W. Gibson, Michael R. Dunham,* for appellee.