## A09A1430. GALLAGHER et al. v. THE BUCKHEAD COMMUNITY BANK.

(683 SE2d 50)

ELLINGTON, Judge.

In September 2006, Donald and Claudine Gallagher filed a declaratory judgment action in the Superior Court of Fulton County, asking the court to issue a ruling that would remove any cloud from the title of property they acquired in February 2006. Specifically, they asked the court to rule that they purchased such property without notice of a judgment lien held by The Buckhead Community Bank (the "Bank") against the seller, Caryn Snyder, that the lien was outside of their chain of title, and that, as a result, they were good faith purchasers for value. After considering the parties' cross-motions for summary judgment, the court ruled that the Gallaghers failed to exercise due diligence in discovering the lien and granted the Bank's motion for summary judgment. The Gallaghers challenge the court's conclusion on appeal. For the following reasons, we reverse the court's judgment and remand this case with direction for the court to grant the Gallaghers' motion for summary judgment.

"In order to prevail on a motion for summary judgment under OCGA § 9-11-56, the moving party must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand judgment as a matter of law." (Citation omitted.) *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006). Under OCGA § 9-11-56 (e), when a party moves for summary judgment and supports his or her motion by submitting affidavits, depositions, or answers to interrogatories, the nonmoving party

> may not rest upon the mere allegations or denials of his [or her] pleading, but his [or her] response, by affidavits or as otherwise provided in this Code section, must set forth specific facts showing that there is a genuine issue for trial. If he [or she] does not so respond, summary judgment, if appropriate, shall be entered against him [or her].

> Moreover, on appeal from the denial or grant of summary judgment[,] the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citations omitted.) *Benton v. Benton,* 280 Ga. at 470. So viewed, the record shows the following undisputed facts.

In May 2001, the Bank obtained a judgment against Caryn Mlaver and her husband, Bernard Mlaver, in a lawsuit arising from a loan by the Bank to the Mlavers in connection with the husband's medical practice. The Bank secured a writ of fieri facias ("fi. fa.") against "Caryn Mlaver" and "Bernard Mlaver," and the fi. fa. was recorded in the general execution docket of Fulton County in June 2001. The Mlavers divorced in 2002, and the decree restored Caryn Mlaver's maiden name, "Caryn Eve Snyder." In 2003, Caryn Snyder and her father, Robert Snyder, purchased a condominium in Fulton County ("the property"). There is no evidence that, at the time of that purchase, the Bank knew that Caryn Mlaver was using her maiden name or that she had purchased real property in that name. Thus, the Bank did not amend the fi. fa. to refer to "Caryn Snyder" or to the property that she had purchased under that name.

In 2001, Bernard Mlaver filed a petition for Chapter 7 bankruptcy protection. In August 2005, the bankruptcy trustee served by mail an "Order and Notice of Hearing" upon all creditors, including the Bank and its counsel, notifying them of a proposed settlement of a fraudulent conveyance action against "[Bernard Mlaver's] ex-wife, Caryn Mlaver *aka Caryn Snyder,*" among other defendants. (Emphasis supplied.)

In January 2006, Snyder and the Gallaghers entered into a purchase and sale agreement for the property. There is no evidence that, at the time they entered into the contract, the Gallaghers knew or had any reason to know that Snyder had previously been married, that she had previously been known by her married name, that there was a judgment lien against her or that a fi. fa. had been recorded which referred to Snyder under her married name. A title examination revealed that the documents in the chain of title showed that the property was owned by "Caryn Snyder" and "Robert E. Snyder." In addition, an examination of the general execution docket in Fulton County did not reveal any fi. fas. or judgment liens against "Caryn Snyder."

Before Snyder and the Gallaghers closed on the sales contract, the Bank learned that Snyder had purchased the property in 2003, and it obtained a copy of the warranty deed which showed that the

owners of the property were "Caryn Snyder" and "Robert E. Snyder." After confirming the information, the Bank filed an amended fi. fa. on February 14, 2006, intending to add the name "Caryn Snyder" as an alternative name of Caryn Mlaver. Due to a clerical error, however, the amended fi. fa. did not include Snyder's name.

On February 23, 2006, the Gallaghers closed on the sales contract, and Snyder executed a warranty deed conveying the property to them. As part of the closing, Robert Snyder quitclaimed his interest in the property to Snyder. The closing attorney obtained a copy of Snyder's Georgia driver's license, which showed her name as "Caryn Eve Snyder." Snyder also signed an owner's affidavit in which she falsely swore under oath that the property was not subject to any encumbrances or liens and that there were no outstanding judgments against her.[1] Nothing that happened during the closing gave either of the Gallaghers or the closing attorney any reason to question whether Snyder was being honest about her name or about whether there were any outstanding judgments that would affect the Gallaghers' title to the property.

The warranty deed from Snyder to the Gallaghers was recorded in Fulton County on February 28, 2006. A week later, on March 6, the Bank finally amended the fi. fa. to show that "Caryn Mlaver" was also known as "Caryn Snyder." Snyder subsequently filed a voluntary Chapter 7 bankruptcy petition on May 31.

After the closing, the counsel for the title insurance company requested that the Bank remove the fi. fa. from the Fulton County real estate records. When the Bank refused to do so, the Gallaghers filed a declaratory judgment action asking the court to rule that they were good faith purchasers for value without notice of the Bank's lien and that, as a result, the Bank's fi. fa. did not constitute a lien against the title to their property. The Gallaghers and the Bank both filed motions for summary judgment, and the court conducted a hearing on the motions in November 2008. During the hearing, the Bank argued that the Gallaghers and their agents would have known about the Bank's judgment lien against Snyder if they had just asked Snyder whether she had used other names in the past. The trial court agreed with the Bank and ruled that the Gallaghers had failed to exercise due diligence by failing to ask Snyder about her past names and, consequently, were not good faith purchasers for value without notice of the Bank's lien. Based upon its conclusion that the

---

[1] In fact, the Bank admitted in judicio that, "[a]lthough Ms. Snyder was aware of the judgment against her by [the Bank], she falsely executed the Owner's Affidavit in order to obtain the proceeds of the sale."

fi. fa. still represented a valid lien against the property, the court granted the Bank's motion for summary judgment.

After reviewing the entire record on appeal de novo, however, we conclude that the Gallaghers presented undisputed evidence demonstrating that, under the circumstances presented, neither they nor their agents were negligent in failing to ask Snyder about her use of other names in the past. Therefore, not only did the court err in finding that the lien against the property was still valid and in granting the Bank's motion for summary judgment, but the court also erred in denying the Gallaghers' motion for summary judgment.

1. Under OCGA § 9-12-86 (b), a writ of fi. fa. issued pursuant to a judgment of the superior court will not affect or become a lien upon the title to real property owned by the judgment debtor until the fi. fa. "is recorded in the office of the clerk of the superior court of the county in which the real property is located and is entered in the indexes to the applicable records in the office of the clerk." Further, under OCGA § 9-12-81 (b),

> [a]s against the interest of third parties acting in good faith and without notice who have acquired a transfer or lien binding the property of the defendant in judgment, no money judgment obtained within the county of the defendant's residence in any court of this state . . . shall create a lien upon the property of the defendant unless the execution issuing thereon is entered upon the execution docket. When the execution has been entered upon the docket, the lien shall date from such entry.

The filing and recordation of a fi. fa. provides constructive notice to subsequent purchasers of property owned by the judgment debtor of the existence of a prior interest in the property. *Deljoo v. SunTrust Mtg.*, 284 Ga. 438, 439 (668 SE2d 245) (2008). Thus,

> [t]o qualify as a bona fide purchaser for value without notice, a party must have neither actual nor constructive notice of the matter at issue. A purchaser of land is charged with constructive notice of the contents of a recorded instrument within its chain of title. Conversely, a purchaser is not charged with constructive notice of interests or encumbrances which have been recorded outside the chain of title.

(Footnotes omitted.) *Virginia Highland Civic Assn. v. Paces Proper-*

*ties*, 250 Ga. App. 72, 74 (550 SE2d 128) (2001).[2]

In addition, a purchaser of real property is not only charged with notice of every fact shown by the records in the chain of title, but is also "presumed to know every other fact which [the] examination suggested." (Citations and punctuation omitted.) *Deljoo v. SunTrust Mtg.*, 284 Ga. at 439. Thus, when information appears in the county's records or occurs during the sale of real property that would excite a reasonable purchaser's attention regarding the existence of a lien or other issue affecting the title to the property, the purchaser has a duty to make a further inquiry. OCGA § 23-1-17. The notice which is sufficient to create this duty to inquire is also constructive notice of "everything to which it is afterwards found that such inquiry might have led." Id. It follows that, once the duty to inquire arises, a purchaser's ignorance of a fact, such as a lien or other issue affecting the title to the property, due to his or her negligence in failing to make the additional inquiry will be the equivalent of the purchaser's constructive knowledge of that fact. Id.[3]

2. Turning to the arguments on appeal, the Gallaghers contend that the court erred in finding that they had failed to exercise due diligence and that, as a result, they were not good faith purchasers for value without notice of the Bank's lien. On the other hand, the Bank argues that it properly filed its fi. fa. and that the Gallaghers and their agents were solely responsible for failing to discover it prior to closing on the property. According to the Bank, "[a]ll that the [Gallaghers] or their agents had to do was ask if [Snyder] had aliases or other names that she had used previously. All they had to do was ask if they could run a credit check to determine other names or aliases."

The record shows, however, that the Gallaghers presented the affidavit of an expert in commercial and residential real estate transactions, contracts, sales closings, loan closings, title examinations and title insurance which affirmatively demonstrated the lack

---

[2] See *Virginia Highland Civic Assn. v. Paces Properties*, 250 Ga. App. at 74-75 (purchaser was "not charged with notice of encumbrances upon its property contained in an agreement settling litigation to which it was not a party, merely because an uncodified municipal ordinance and state legislative resolution made reference to the agreement." The Court stated that "[t]o hold otherwise would place a burden on title examiners to alert themselves to information which there is no systematic way to discover."); see also *Brandenburg v. Navy Fed. Credit Union*, 276 Ga. App. 859, 861 (1) (625 SE2d 44) (2005) (lender who chose not to have a title search performed before making a loan and accepting encumbered property as security for the loan was not entitled to summary judgment based upon a finding that it was protected by the provisions of OCGA § 9-12-81, because it failed to establish as a matter of law that it was a "third part[y] acting in good faith and without notice" of the encumbrance).

[3] See *Webb v. Rushing*, 194 Ga. App. 732, 733 (2) (391 SE2d 709) (1990) (purchasers' actual knowledge of a porch leak demanded further inquiry, and their subsequent failure to inspect the roof more extensively resulted in their being charged with knowledge of the roof's actual condition).

of such negligence. In his affidavit, the expert stated that, after reviewing the documents in the record along with the applicable State Bar of Georgia Title Standards, the Georgia Code, and secondary sources, it was his opinion:

> That at the time Caryn Snyder conveyed the . . . Property to [the Gallaghers] there was nothing in the land records of Fulton County, Georgia which would provide a bona fide purchaser for value constructive or actual notice of the existence of the [Bank's] judgment lien; . . .

> That even if a reasonable and experienced title examiner had looked at the [Bank's] judgment lien, there was no way for [the examiner] to know, in the normal course of a title examination, that the lien against "Caryn Mlaver" applied to lands owned in the name of "Caryn Snyder"[;] . . .

> That *neither title examiners nor the closing attorneys have an obligation, either at law, Title Standard, pattern or practice to determine any and all names under which a seller may have liens against [him or her;]* . . .

> That the purpose of filing liens is to give notice to the world of a claim by the holder of said lien and if the holder of said lien wants said lien to be discovered through a regularly conducted title examination, the holder of the lien has the obligation to confirm that the lien is in a name assured to be discovered[; and]

> That the [Bank's] lien was not recorded in such a way as could be found in a normal and regular title examination.

(Emphasis supplied.) The expert's affidavit also stated that "[o]n the date of the transfer of title from Caryn Snyder to the [Gallaghers], there was no way an individual examining the [Bank's] recorded judgment lien could have told from its face that 'Caryn Mlaver' was one and the same as 'Caryn Snyder.'" In addition, the Gallaghers presented the affidavit of the closing attorney in this case, who opined that, because the title examiner had been asked to search the title for the property under the name of "Caryn Snyder," which the deeds in the chain of title listed as the owner's name, the examiner would not have found a judgment under the name of "Caryn Mlaver" in the Fulton County deed records.

Once the Gallaghers presented this evidence, the Bank was not permitted to rest upon mere allegations of negligence by the Gal-

laghers or their agents, but was required to respond by affidavits or other competent evidence that "set forth specific facts showing that there is a genuine issue for trial." OCGA § 9-11-56 (e). In this case, however, the Bank failed to present any evidence to dispute the affidavits of the Gallaghers' witnesses or to cite to any authority which imposes a duty on purchasers of real estate or their agents to investigate prior or alternative names of the seller when, as in this case, nothing occurred prior to or during the closing that created a duty to inquire. As shown above, the undisputed evidence shows that the title of the property was in Snyder's name, she presented a Georgia driver's license showing her name as Caryn Snyder, and she swore under oath that there were no liens against her or the property. The Bank has failed to demonstrate that it was unreasonable or a failure to exercise due diligence for the Gallaghers to investigate further regarding Snyder's background under these circumstances. Other than to ensure that the title to the property was unencumbered, which was the purpose of the owner's affidavit, there was no apparent reason for the Gallaghers to be concerned about Snyder's personal background, her past financial dealings or her creditworthiness.[4]

Moreover, in contrast to the Gallaghers, the Bank had *actual notice* at least six months before the February 2006 closing that "Caryn Mlaver" was also using the name "Caryn Snyder." As shown above, the Bank and its counsel received an "Order and Notice of Hearing" in Dr. Mlaver's bankruptcy case in August 2005 that informed them of the alternative names. It also had actual notice in January 2006 that the person against whom it had secured the 2001 judgment, "Caryn Mlaver," owned the property at issue under her

---

[4] To the extent the Bank suggests that the Gallaghers should have obtained a credit report on Snyder prior to closing, it has failed to cite to any authority to support this argument or to show that the Gallaghers or their agents would have been authorized to obtain the report. Accordingly, this argument is deemed abandoned. Court of Appeals Rule 25 (c) (2).

Further, to the extent the Bank relies on the holding of *Truitt v. American Savings Bank*, 175 Ga. 785 (166 SE 190) (1932), for its contention that the Gallaghers had an affirmative duty to examine Snyder's previous names and financial history, including transactions she undertook under her married name, such reliance is misplaced. The case is distinguishable on its facts, but suggests, in dicta, that a bank that lent money to a property owner, who was hiding her true identity by using an assumed name, in exchange for a deed to secure debt on the property had a duty to delve into the debtor's personal and financial history in order to determine the identity of the actual owner and if there were any existing liens on the property. Id. The bank's failure to make such an inquiry caused its security interest in the property to be considered secondary to a lien that had previously been filed against the debtor under her married name. Id. In contrast, in this case, the Gallaghers were not lending Snyder money in exchange for a security interest in the property, but were only interested in purchasing the property from her and getting a clean title to the property. In addition, there is no dispute that the actual, legal owner of the property was "Caryn Snyder," as shown on the deeds and her driver's license.

maiden name, "Caryn Snyder." Therefore, the Bank had ample time to amend the fi. fa. to ensure that any future purchasers of Snyder's property had notice of the lien, yet it did not attempt to do so until February 14, 2006.

Accordingly, the undisputed evidence of record does not show that the Gallaghers and their agents failed to exercise due diligence simply because they failed to ask Snyder whether she had used other names in the past.

3. Finally, even if the Gallaghers had had some reason to ask Snyder about her past names, the record does not support a finding that their failure to do so *caused* the title examiner to miss the Bank's lien during the title search. As shown above, it is undisputed that, at the closing, Snyder falsely swore under oath that she knew of no outstanding liens or other matters affecting the title to the property or judgments against her. In fact, the Bank admitted in judicio that Snyder intentionally held the property in her maiden name and made the false statements in the owner's affidavit *in order to defraud* the Bank of the proceeds from the sale of the property. Thus, even if the Gallaghers had asked Snyder about whether she had previously used other names, there is no reasonable basis upon which to presume that Snyder would have voluntarily divulged any information that would have led to the discovery of the fi. fa. and, as a consequence, deprived her of the proceeds of the sale of the property. The Bank's contention to the contrary is pure speculation and lacks any probative value. It follows that, regardless whether the Gallaghers should have asked Snyder about her other names, such oversight did not cause the title examiner to miss the Bank's judgment lien and prevent the Gallaghers from being good faith purchasers for value without notice of the lien.

4. In conclusion, because the Bank failed to present any evidence that the Gallaghers or their agents had actual or constructive knowledge about its lien prior to closing on the sale of the property which prevented them from being good faith purchasers for value without notice, the trial court erred in granting the Bank's motion for summary judgment. Instead, the undisputed evidence demonstrates that the Gallaghers were entitled to summary judgment. Consequently, this case is reversed and remanded with direction to vacate the grant of summary judgment to the Bank and enter summary judgment in favor of the Gallaghers.

*Judgment reversed, and case remanded with direction. Johnson, P. J., and Mikell, J., concur.*

DECIDED JULY 24, 2009 —
RECONSIDERATION DENIED AUGUST 7, 2009 ■

*Greenfield, Bost & Kliros, William L. Bost, Jr.*, for appellants.
*Siegel & Golder, Mark L. Golder, Lynn L. Carroll*, for appellee.