S09A1510. MONTGOMERY et al. v. BARROW et al.

(692 SE2d 351)

CARLEY, Presiding Justice.

Barrow & Byrd Properties, Inc. (B & B), purchased approximately 223 acres of land from the estate of Cauley Barrow for $247,800. Lamar and Robbie Ann Montgomery, as executors of the estate of Robert Barrow (Executors), filed an action to quiet title and for other relief, claiming that Robert Barrow, who was the son of Cauley Barrow, owned the property from 1975 until his death in 2000, pursuant to four unrecorded warranty deeds transferring the property from his father to him. B & B answered that it was a bona fide purchaser for value without notice of the unrecorded deeds. A jury trial was held solely as to the issue of whether Robert Barrow had owned the property. The jury returned a verdict finding that Robert Barrow had not owned the property by prescription, but that he had owned it at the time of his death by virtue of the unrecorded deeds. Several months later, the parties filed opposing motions for summary judgment on the issue of whether B & B was a bona fide purchaser without notice of the unrecorded deeds. The trial court denied the motion filed by Executors, but granted summary judgment in favor of B & B. Executors appeal.

1. Executors contend that the trial court erred in denying their summary judgment motion and granting summary judgment in favor of B & B because the evidence shows that B & B had notice sufficient to preclude it from being a bona fide purchaser for value

without notice. "A bona fide purchaser for value is protected against outstanding interests in land of which the purchaser has no notice. [Cits.]" *Farris v. Nationsbanc Mtg. Corp.*, 268 Ga. 769, 771 (2) (493 SE2d 143) (1997). Indeed, "there is a presumption of good faith which attaches to a purchaser for value and which remains until overcome by proof. [Cit.]" *Anderson v. Streck*, 190 Ga. App. 224, 226 (378 SE2d 526) (1989). However,

> "[a]ny circumstance which would place a man of ordinary prudence fully upon his guard, and induce serious inquiry, is sufficient to constitute notice of a prior unrecorded deed. And a younger deed, taken with such notice, acquires no preference by being recorded in due time." [Cit.]

*Price v. Watts*, 223 Ga. 805, 806 (2) (158 SE2d 406) (1967).

Executors base their challenge to the trial court's summary judgment rulings on the testimony of Homer Barrow, one of the owners of B & B. He testified that the executor of the estate of Cauley Barrow told him that title to the property was in Cauley Barrow's name at the time of his death, and that a title search confirmed that claim. His partner in B & B, Garland Byrd, Jr., also testified that a title search showed that Cauley Barrow owned the property at the time of his death. However, Homer Barrow further testified that Eddie Davis, Executors' attorney, told him that Executors said that they had unrecorded deeds to the property. Homer Barrow asked Davis to provide copies of the deeds, but Executors repeatedly failed to provide such copies to Davis or B & B. Executors eventually claimed that the deeds had been destroyed in a fire. Davis testified that because Executors could not provide copies of the deeds, he "began to assume they did not exist." It was not until Executors filed this lawsuit that they came forward with copies of the unrecorded deeds, attaching them to the complaint.

The dissent claims that, in addition to the evidence cited by Executors, there is other undisputed evidence in the record which demands summary judgment in favor of Executors. According to the dissent, most telling is the evidence that Homer Barrow discussed buying the property from Robert Barrow. Dennis Verdan, a longtime friend of Robert Barrow, gave hearsay testimony claiming that Robert Barrow told him that Homer Barrow had offered to buy the property. When Homer Barrow was asked about that claim, he testified that he did not remember making such an offer. He explained that Robert Barrow called him and asked for help paying off debts owed on the property by either buying it or helping sell it, but he did not believe that he would have offered to buy the property at that point because of the uncertainty concerning those debts. He

further testified that, at that time, he did not know who owned the property, and that Robert Barrow never claimed ownership or mentioned the unrecorded deeds to him.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. [Cit.]

*Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). In this case, the evidence that Davis told Homer Barrow that Executors claimed to have unrecorded deeds, and the other evidence cited by the dissent, creates a genuine issue of material fact as to whether B & B had sufficient notice of the unrecorded deeds. See *Page v. Will McKnight Constr.*, 282 Ga. App. 571, 572 (1) (639 SE2d 381) (2006) (evidence that purchaser was told about lien on property raised question of fact for jury about whether purchaser had actual notice of the encumbrance). "If, and only if, no disputed issue of material fact remains is the trial court authorized to grant summary judgment." *Georgia Canoeing Assn. v. Henry*, 263 Ga. 77, 78 (428 SE2d 336) (1993). Accordingly, the trial court erred in granting summary judgment in favor of B & B.

However, the evidence, including Executors' repeated failure to provide copies of the unrecorded deeds, does not demand a further finding that the presumption of B & B's good faith purchase for value has been overcome, nor does it require a conclusion that Executors are entitled to judgment as a matter of law. In arguing for a different result, the dissent states that "the majority . . . relies on selected bits of the extensive record, rather than considering the record as a whole." (Dissent, p. 902, n. 1) Contrary to that statement, we have in fact considered the whole record. Moreover, it is precisely because there are bits of evidence in the record which create genuine issues of material fact that summary judgment is not appropriate in this case. It is not the role of this Court, but is the role of a jury to sort through the evidence, resolve conflicts, and make findings of fact based on the evidence it finds credible.

> " ' "A jury in arriving at a conclusion upon disputed issues of fact may believe a part of the testimony of a witness or witnesses, and reject another part thereof, it being their duty to ascertain the truth of the case from the opinion they entertain of all the evidence submitted for their consideration." [Cit.]' [Cit.]"

*Southern R. Co. v. Newman*, 187 Ga. 132, 134 (1) (199 SE 753)

(1938). Indeed, because it is a jury's prerogative to accept or reject, in whole or in part, the evidence submitted, "generally the question of what would put a prudent man on his guard is a question for the jury. . . ." *Heard v. Nat. Bank of Wilkes*, 143 Ga. 48, 51 (2) (84 SE 129) (1915). See also *Dollar v. Dollar*, 214 Ga. 499, 503 (1) (105 SE2d 736) (1958) ("The question as to whether the defendant . . . had actual notice, or as to whether the circumstances were sufficient to put him on notice of the state of the title, were questions to be determined by the jury. [Cits.]"); *R.W. Holdco, Inc. v. SCI/RW Holdco, Inc.*, 250 Ga. App. 414, 415 (1) (551 SE2d 825) (2001) (whether circumstances were sufficient to put purchaser on notice of the appellants' interest in the property was a question of fact to be determined by the trier of fact). " '"The Act (authorizing summary judgment) cannot deprive a party of the opportunity to have a trial of a genuine issue as to any material fact, and it is indeed a great responsibility to say that "in truth there is nothing to be tried."' [Cit.]" *Weekes v. Parker*, 120 Ga. App. 549 (2) (171 SE2d 660) (1969). Consistent with the general rule, it is apparent from all of the evidence in this case that there is "a jury question . . . as to whether [the] facts and circumstances were sufficient to place [B & B] fully on guard and induce serious inquiry as to the existence of the unrecorded deed[s]." *Jeanes v. Moore*, 240 Ga. 466, 467 (241 SE2d 222) (1978). Because there exist genuine issues of material fact as to notice and whether B & B is a bona fide purchaser, the trial court's erroneous grant of B & B's motion for summary judgment must be reversed, and its correct denial of Executors' motion for summary judgment must be affirmed. *Price v. Watts*, supra (affirming denial of summary judgment where question of fact existed as to buyer's notice of unrecorded deed to secure debt). Compare *Anderson v. Streck*, supra (evidence on summary judgment showed without dispute that bona fide purchaser did not have notice of lien).

2. B & B also argues that Executors are precluded from asserting title to the property based on estoppel. The estoppel by conduct doctrine is codified in OCGA § 51-6-4, subsection (a) of which recognizes that "[a] fraud may be committed by acts as well as words[,]" and subsection (b) of which states that "[o]ne who silently stands by and permits another to purchase his property, without disclosing his title, is guilty of such a fraud as estops him from subsequently setting up such title against the purchaser." B & B contends that Executors are estopped from asserting title to the property based on the unrecorded deeds because they sat silently by while B & B purchased the property from the Cauley Barrow estate. However, estoppel by conduct operates only in favor of a bona fide purchaser without notice. *Williamson v. Floyd County Wildlife Assn.*, 216 Ga. 760, 761 (2) (119 SE2d 344) (1961). "In construing

[OCGA § 51-6-4] this court has found that it is inapplicable where a party had actual knowledge of the rights of the other party who remained silent. . . .'' *Anderson v. Manning*, 221 Ga. 421, 423-424 (144 SE2d 772) (1965). As discussed above in Division 1, there are genuine issues of material fact as to whether B & B had notice of the unrecorded deeds and was a bona fide purchaser. Moreover, there are questions of fact as to whether Executors remained silent or adequately informed B & B of their claimed interest. Accordingly, OCGA § 51-6-4 does not provide an alternative basis for affirming the trial court's summary judgment ruling in favor of B & B.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Hines and Nahmias, JJ., who concur in part and dissent in part.*

NAHMIAS, Justice, concurring in part and dissenting in part.

I agree with much of the majority's discussion of the applicable legal analysis and with part of the majority's results. I concur in Division 1's holding that the trial court erred in concluding as a matter of law that B&B was a bona fide purchaser for value without notice of the prior claim to the property made by Robert Barrow and the Executors of his estate, and thus that the trial court's grant of summary judgment to B&B must be reversed. I also concur in Division 2's holding that estoppel by conduct is not a viable alternative ground on which to affirm the trial court's judgment. I disagree, however, with the majority's application of the legal analysis to the *full set* of undisputed material facts shown by the record on appeal. Whether a bona fide purchaser had notice of a prior claim is a decision generally left to the jury at trial. But where, as in this case, no reasonable jury could conclude that the purchaser lacked notice of the prior claim after considering *all* of the undisputed material facts, summary judgment is appropriate. I would therefore hold that the trial court erred in denying summary judgment to the Executors. Accordingly, I concur in part of, but must also dissent in part from, the Court's opinion.

The majority asserts that the Executors' challenge is based entirely on the testimony of Homer Barrow, one of B&B's owners. See Majority Op. at 897. Homer Barrow's testimony was certainly damaging, and perhaps even fatal, to B&B's claim that it was a bona fide purchaser for value without notice of Robert Barrow's prior claim of ownership of the property. But the record also contains numerous additional facts from a variety of sources — all undisputed — that the majority unaccountably ignores or improperly discounts. These undisputed facts lead inexorably to the conclusion that B&B knew — had notice — of Robert Barrow's claim in life, and the Executors' claim on behalf of his estate, that he owned the property

by way of four unrecorded deeds from his father, Cauley Barrow.

Cauley Barrow died in 1983. B&B contends that it validly purchased the property from Cauley Barrow's estate, through Kenneth Barrow, over 20 years later, in 2004. Thirty years before B&B purported to buy the property, in the mid-1970's, Cauley Barrow divided his property between his two sons who followed him into farming, deeding Kenneth Barrow approximately 205 acres and deeding Robert Barrow approximately 223 acres. Robert Barrow did not record his deeds, but Kenneth Barrow admitted in his deposition and at trial that he knew of those deeds.

It is undisputed, but unacknowledged by the majority, that Homer Barrow and his business partner in B&B both grew up in the area, and both knew that Robert Barrow had lived on the property and farmed all of it for almost 20 years after Cauley Barrow's death until his own death in 2000.

It is also undisputed, but unacknowledged by the majority, that Homer Barrow and his business partner both knew that the federal government had lent Robert Barrow hundreds of thousands of dollars based on his claimed ownership interest in the farmland. Their title searches did not reveal the four unrecorded deeds from Cauley Barrow to Robert Barrow, but the title searches did show the deeds to secure debt recorded by the government, which listed the property as collateral and were signed by Robert Barrow as the borrower. Knowledge that the government had made substantial loans to Robert Barrow secured by his claimed interest in the property is an obvious source of notice of such a claim.

It is also undisputed that, after Robert Barrow died and B&B was considering purchasing the property, Homer Barrow knew enough about Robert Barrow's claim of ownership to ask Eddie Davis, Robert Barrow's attorney in life who was also the attorney for his estate, whether there was "a deed we needed to know about" before B&B purchased the property from Cauley Barrow's estate. Davis, as counsel for the Executors, repeatedly told Homer Barrow, prior to the 2004 closing, that Robert Barrow's estate claimed ownership of the property by virtue of the four unrecorded deeds from Cauley Barrow. When Homer Barrow asked to see the deeds, Davis told him that they had burned up in a house fire in 2003. The majority refers to the destruction of the deeds before the closing as something the "Executors eventually claimed," Majority Op. at 897, but the fact that the deeds were destroyed in a house fire in 2003 is not disputed by the parties.

The majority emphasizes that the Executors "repeatedly" failed to provide copies of the unrecorded deeds to Homer Barrow, despite his requests to see them. Majority Op. at 897. See also id. at 898. But this fact actually cuts strongly *against* B&B's contention that it

lacked any notice of another claimed interest in the land before B&B purchased the property from Cauley Barrow's estate. If Homer Barrow had no notice that Robert Barrow and his Executors claimed an interest in the land, then why did he keep asking them to *prove* their claim? The majority fundamentally confuses the material issue of a real estate purchaser's *notice* of a competing claim to the property with the immaterial issue, when determining bona fide purchaser status, of the actual *validity* of that claim. Our law clearly places the burden on the purchaser, once it has notice, to resolve the competing claim before buying the property or risk losing the property if the prior claim is later determined to be valid — as a jury has already determined the Executors' claim is. The failure of Robert Barrow and his representatives to provide copies of the unrecorded deeds supporting his claim may seem inequitable, but as discussed below, that does not undermine B&B's notice of that claim, nor does it support B&B's estoppel argument, because Georgia's estoppel by conduct statutes and case law remove that defense from a purchaser with notice of a claim or the equal ability to determine the truth.

Most telling of B&B's notice, however, *is the undisputed fact that one of the partners in B&B discussed buying the property from Robert Barrow, or selling it as his agent, when he was still alive.* Robert Barrow was having financial difficulties because of the government loans, and he approached his nephew, Homer Barrow of B&B, about selling the farm. Homer Barrow admitted that he discussed buying the property from Robert Barrow — not from Cauley Barrow's estate — or selling the property on behalf of Robert Barrow.[1]

---

[1] The majority opinion claims that this factual issue is disputed. See Majority Op. at 897-899. But the majority again relies on selected bits of the extensive record, rather than considering the record as a whole. Homer Barrow freely admitted talking to Robert Barrow about buying the property *from Robert Barrow* or selling it on *his* behalf. See Homer Barrow Depo. at 18 ("We were going to buy it or we'd sell it for him or whatever he wanted to do."). Homer Barrow did testify in his 2006 deposition that he did not remember making an offer of $800 per acre to Robert Barrow, but even then he did not deny doing so. When specifically asked, "Did y'all ever talk about $800 an acre for his land?", his answer was: "Probably could've. I don't remember. I mean, I don't know whether we did or not. I wouldn't doubt that." Id. at 38. The majority does not mention that Homer Barrow testified again at the 2007 trial in this case – testimony that was also part of the record with regard to the motions for summary judgment. At that trial Homer Barrow again stated that, although he did not remember offering $800 per acre for the property, he did remember talking to Robert Barrow about buying the property *from him*, or helping him sell it to someone else:

> Q: And in your discussion with him [Robert Barrow] you were talking to him about either buying the property from him or selling it as his agent, is that right?
> A: That's correct.
> Q: And I think you said on direct you may have discussed the payment of eight hundred dollars per ache [sic], is that right?
> A: That's correct.

No rational jury could believe that Homer Barrow, who bought

At the trial another local farmer, Dennis Verdan, testified that Robert Barrow had also discussed selling the land to him. Verdan testified unequivocally that he was told by Robert Barrow that Homer Barrow had made an offer of $800 per acre for the property. Verdan's testimony was not objected to on hearsay or any other ground, and indeed his credibility was not challenged; B&B did not even cross-examine him.

The majority opinion's rejoinder – that there are "bits of evidence in the record which create genuine issues of material fact" precluding summary judgment for the Executors, Majority Op. at 898 – is a distortion of summary judgment law. According to the majority and the old case it quotes (which was not a summary judgment case), a trial court considering a summary judgment motion must parse each witness's testimony, alert for the smallest inconsistency, and, upon finding one, seize upon it as a reason to deny summary judgment, because a jury, with its power to make credibility determinations, is free to accept some parts of a witness's testimony while rejecting other parts. See Majority Op. at 898 (quoting *Southern R. Co. v. Newman*, 187 Ga. 132, 134 (199 SE 753) (1938)). That is not the proper way to conduct a summary judgment analysis, for at least two reasons.

First, although conflicting testimony from *different* witnesses on an issue of material fact precludes summary judgment, where the inconsistency exists within the testimony of a single party-witness, the rule is otherwise. As we have explained much more recently, "a trial court that is faced with a party's self-contradictory sworn testimony on a material fact should disregard the portions of that testimony that favor the party when deciding a motion for summary judgment, unless the party offers a reasonable explanation for the contradiction." *CSX Transp., Inc. v. Belcher*, 276 Ga. 522, 523 (579 SE2d 737) (2003). Any other rule would mean that a party could always defeat a summary judgment motion, and force a jury trial, simply by offering contradictory testimony on a material fact. See *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28 (343 SE2d 680) (1986). In this case, it is clear from Homer Barrow's testimony that he knew that Robert Barrow and his Executors *claimed* ownership of the property, even if he questioned whether that claim was legally enforceable and even if he could not recall whether he had made an actual offer to buy the property from Robert Barrow (as opposed to only discussing such a purchase). To the extent the isolated snippets of his testimony cited by the majority could be construed to support a contrary inference, see Majority Op. at 897, they are self-contradictory, offered by an owner of B&B, and appropriately disregarded in ruling on the Executors' summary judgment motion. See *Thompson v. Ezor*, 272 Ga. 849, 851 (536 SE2d 749) (2000).

Second, and even more fundamentally, to preclude summary judgment, the disputed factual issues must be *material* to the legal issues in the case. It is insufficient for the party opposing summary judgment simply to cite contradictory evidence that makes no difference to the legal analysis, and it is also insufficient simply to claim that a jury could disregard all or part of the evidence offered by the moving party without offering contrary evidence. "When a motion for summary judgment is made and properly supported, the opposing party must respond and set forth specific facts showing a genuine issue for trial or else summary judgment, if appropriate, shall be entered." *Porter v. Felker*, 261 Ga. 421, 421 (405 SE2d 31) (1991). Accord *Richards v. Tolbert*, 232 Ga. 678, 678 (208 SE2d 486) (1974) ("If the movant carries his initial burden, as was done in this case, and the respondent does not present refuting evidence that is adequate to raise an issue of fact, a summary judgment for the movant must be granted."). See also *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-248 (106 SC 2505, 91 LE2d 202) (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphasis in original)); id. at 249-250 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." (citations omitted)); *Cox v. Ky. Dept. of Transp.*, 53 F3d 146, 150 (6th Cir. 1995) ("[A] nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part upon credibility considerations or subjective evidence. Instead, the nonmoving party must present affirmative evidence to defeat a properly supported motion for summary judgment."); *Rinieri v. Scanlon*, 254 FSupp. 469, 474 (S.D. N.Y. 1966) ("All these cases support the proposition, applicable here, that the party opposing summary judgment must be able to point

904

and sold real estate for a living, discussed buying the property from Robert Barrow without realizing that Robert Barrow claimed an interest in the land. Again, whether Homer Barrow believed that Robert Barrow was *the legal owner* of the property may still be disputed, but that is not the *material* issue in this case; summary judgment instead turns on whether B&B had any reason to believe that Robert Barrow and his estate merely *claimed an interest* in the property, placing B&B on notice that it needed to resolve that claim before purchasing the property from someone else.

As the majority correctly states, notice of a prior claim is demonstrated by " '[a]ny circumstance which would place a man of ordinary prudence fully upon his guard, and induce serious inquiry.' " *Price v. Watts*, 223 Ga. 805, 806 (158 SE2d 406) (1967) (quoting *Gardner v. Granniss*, 57 Ga. 539, 541 (1876)), quoted in Majority Op. at 897. We might debate whether any one of the four circumstances just discussed, standing alone, meets this test, or at least leaves uncertainty requiring a jury to make the determination — although it is hard to see how Homer Barrow's admitted prior discussions about purchasing the property from Robert Barrow could leave any doubt that B&B was on notice of Robert Barrow's claimed interest in the property.

In deciding on summary judgment, however, courts do not consider just one part of the record; the trial court, like this Court on appellate review, is supposed to consider the record as a whole. And viewing the undisputed facts *collectively*, as we must do and a jury would also be required to do, the circumstances unquestionably would place a person of ordinary prudence on notice of the Executors' prior claim to the property. Consequently, as a matter of law, B&B had notice of the Executors' claim, and B&B therefore did not qualify as a bona fide purchaser for value without notice. Moreover, once on notice, B&B was charged with "notice of everything to which it is afterwards found that such inquiry might have led," OCGA § 23-1-17, including the copies of the unrecorded deeds and the other evidence that has been developed in this litigation. Only by disregarding so much of the record can the majority reach a different conclusion.

B&B seeks to defeat this straightforward application of the test for notice by arguing that, in response to its awareness of the Robert Barrow estate's claim of ownership, it conducted a reasonable inquiry into the true state of the title by performing a title search

to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and that the opposing party may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof.").

that did not reveal the existence of the four unrecorded deeds and by asking the estate's attorney for copies of the unrecorded deeds. The majority picks up on this argument by noting that Davis testified he "began to assume [the deeds] did not exist." Majority Op. at 897. It is undisputed, however, that Davis did not convey his doubts about the deeds to Homer Barrow until *long after the closing*, when this case went to court. Thus, his suspicions — which were inaccurate, as a jury has found that Robert Barrow owned the property by deeds from his father — could have had no effect on B&B's decision to purchase the property despite its notice of the Robert Barrow estate's claim of ownership.

B&B also relies on the fact that a title search did not reveal the four unrecorded deeds from Cauley Barrow to Robert Barrow, and the majority notes that undisputed fact. See id. But this fact alone cannot establish that B&B was a bona fide purchaser for value without notice. Almost by definition, cases where a purchaser claims such status involve an unrecorded (or improperly recorded) prior interest. The test for bona fide purchaser status is not whether the prior interest was recorded, but whether the subsequent purchaser had notice of the *claim* of a prior interest. A prior unrecorded interest has priority over a subsequent interest acquired by a person who is not a bona fide purchaser, whether or not the subsequent interest is recorded. See *Gardner*, 57 Ga. at 540, 556-557. See also *Dyal v. McLean*, 188 Ga. 229, 229 (3 SE2d 571) (1939) ("The knowledge chargeable to a party after he is put on inquiry is not limited to such knowledge only as would be gained by an examination of the public records."). Once a subsequent purchaser has notice of a prior claim, it proceeds at its own risk that the claim might later turn out to be viable. Rather than resolving the prior claim of which B&B had clear notice, by litigation if necessary, B&B proceeded to purchase the property at its own risk.

Indeed, B&B does not really argue that it was unaware of Robert Barrow's and his estate's claim of ownership through the four unrecorded deeds. Rather, B&B complains that it was dissatisfied with the Executors' failure to produce the unrecorded deeds for inspection and with the reason the Executors had for not recording the estate's interest, which was to prevent the government from perfecting its liens against the property; the Executors were contending that the liens had been or should be released or substantially reduced. On the issue of producing the unrecorded deeds, it is undisputed that the original deeds were destroyed in a house fire on January 28, 2003, almost two years before B&B purported to buy the property from Cauley Barrow's estate on October 8, 2004. The Executors obviously could not produce the original deeds, and it is undisputed that they had no copies of the deeds in their possession at

that time. Moreover, while their failure to record might be offensive from the standpoint of taxpayers and the government (which could not enforce its liens), and perhaps of the estate's beneficiaries (though it appears that the failure to record actually worked to their advantage by protecting the property from the liens), B&B cites no authority suggesting that it may rely on any such feelings or rights of third parties to undermine its own notice.

It was only much later, after this litigation commenced, that copies of the unrecorded deeds were located. The agricultural consultant hired by Robert Barrow to negotiate a settlement of his debts with the federal government had a copy of the deeds in his files. But by the time of the 2004 sale to B&B, the agricultural consultant was representing *both* the Robert Barrow estate *and* the Cauley Barrow estate in the ongoing negotiations with the federal government regarding the farm loans. Thus, copies of the deeds were equally available to both estates all along, and B&B, had it been so inclined, could just as readily have obtained copies from the seller, Kenneth Barrow, as it could have from the Executors.

If it were necessary to re-establish originals of the lost deeds, the only way to do so was through a lawsuit. See OCGA § 44-5-46. But filing a lawsuit to obtain the truth about who owned the property was a procedure equally available to the Robert Barrow estate and B&B. See Georgia Declaratory Judgments Act, OCGA §§ 9-4-1 to 9-4-10. Indeed, it is because B&B had notice of the Executors' claim, as well as equal means of ascertaining the truth about that claim, that B&B's estoppel by conduct argument fails. See OCGA § 24-4-25 (a) (where estoppel claim relates to the title to real estate, "the party claiming to have been influenced by the other party's acts or declarations must not only have been ignorant of the true title, but also ignorant of any convenient means of acquiring such knowledge"), OCGA § 24-4-25 (b) ("Where both parties have equal knowledge or equal means of obtaining the truth, there shall be no estoppel."). See *Brown v. Tucker*, 47 Ga. 485, 485 (1873) (estoppel by conduct operates only in favor of bona fide purchasers without notice of a silent party's claim to the property); *Wilkins v. McGehee*, 86 Ga. 764, 770 (13 SE 84) (1891) (where the condition of the title is known to both parties, there can be no estoppel).

By their nature, these "notice" cases usually will present a factual dispute that precludes summary judgment and must instead be resolved by a jury at trial. But this is not invariably the case, as sometimes the undisputed material facts in the record support only one result. See, e.g., *Henson v. Bridges*, 218 Ga. 6, 9-10 (126 SE2d 226) (1962) (directed verdict against purchaser on issue of notice); *Gallagher v. Buckhead Community Bank*, 299 Ga. App. 622, 629 (683 SE2d 50) (2009) (holding that summary judgment should have been

entered in favor of purchaser on issue of notice).

Indeed, in the case cited by the majority for the proposition that " 'generally the question of what would put a prudent man on his guard is a question for the jury,' " Majority Op. at 899 (quoting *Heard v. Nat. Bank of Wilkes*, 143 Ga. 48, 51 (84 SE 129) (1915)), this Court affirmed the grant of a directed verdict on the notice issue — as is clear from quotation of the full sentence from that opinion:

> While generally the question of what would put a prudent man on his guard is a question for the jury, *in this case there was nothing on which the jury could base a finding that the bank was charged with notice; and accordingly there was no error in directing a verdict for the plaintiff.*

*Heard*, 143 Ga. at 51 (emphasized portion omitted from majority opinion's quotation). This case is the mirror image of *Heard*, because the record contains no disputed evidence on which a jury could permissibly base a finding that B&B lacked notice of the Robert Barrow estate's claim. The majority asserts that "it is apparent from all of the evidence in this case" that there is a jury question as to B&B's notice, and that "there exist genuine issues of material fact as to notice." Majority Op. at 899. The majority fails to identify, however, any contradictory evidence on any "*genuine* issues of *material* fact," much less to explain how any factual dispute remains in light of the entire record, important parts of which the majority simply ignores.

The undisputed material facts in this case — considered as a whole — demonstrate unequivocally that B&B had legally sufficient notice of the prior claim to the property. Consequently, B&B does not qualify as a bona fide purchaser for value without notice, and the Executors were entitled to judgment as a matter of law on their claim that the Robert Barrow estate owns the property. Accordingly, I would hold that the trial court erred in denying summary judgment to the Executors and remand the case with direction to enter summary judgment in their favor.

I am authorized to state that Justice Hines joins in this opinion.

DECIDED MARCH 25, 2010 —
RECONSIDERATION DENIED APRIL 8, 2010.

*Sell & Melton, Jeffrey B. Hanson, Blake E. Lisenby, David H. McCain*, for appellants.

*David & McPhail, Robert S. McPhail, Walker, Hubert, Gray, Byrd & Christy, Charles W. Byrd*, for appellees.